THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE WILLIAMS, Defendant-Appellant.

First District (1st Division)    No. 78-276

Opinion filed December 28, 1979.

---

James J. Doherty, Public Defender, of Chicago (Lee McMahon and Robert P. Isaacson, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Dale F. Weigand, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

After a bench trial defendant, Willie Williams, was found guilty of murder (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(1)) and armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2) of his aunt, Joella Williams, and was sentenced to 20 to 60 years in the penitentiary. Defendant contends on appeal that there was no probable cause for his arrest and consequently his motion to quash the arrest and suppress his statements made while in custody and all evidence found incident to that arrest were improperly denied. Defendant raises no issue regarding the sufficiency of the evidence to convict beyond a reasonable doubt. We affirm.

On December 19, 1975, the victim was found shot in her apartment in Chicago. The apartment was in disarray and several items were missing. Percy Hollins, a Chicago police officer, testified that he spoke with Jessie Williams, the victim's husband, on December 20, 1975, and Williams told Hollins that he found the victim at approximately 5:30 p.m. the previous day upon returning from work. He called the police and while waiting found that a glass case which had been in a bedroom was now in the living room and that four $100 bills which had been in the case were gone.

Hollins testified that Williams told him he also found a cane in the apartment that was not there when he went to work the morning of the robbery. On talking with the daughter of the victim, Mrs. Love, Hollins testified that he was told that Joella Williams would only let a few people into the apartment: the landlady, the defendant, John Prude, and a Mr. Northworthy. Mrs. Love also said the defendant had stolen a revolver from her mother a year prior to that time. At 4 o'clock a.m. on December 21 during a conversation with John Prude, Hollins testified that Prude said

he had seen the defendant with a cane and had been in the victim's apartment with the defendant the day before the robbery.

Prude told him that the victim let them both in, but when the defendant was out of the room she told him she had to hide her new gun because "she didn't want this one missing and hid it in the bedroom." Prude said the defendant did not have a cane with him when they were in the apartment. After the conversation, Hollins put out a lookout message on a 1967 Cadillac automobile Prude said was driven by the defendant. At 2 a.m. on the morning of December 21, Hollins told Chicago police officer James McMullan that defendant was wanted for investigation and that due to a recent injury, a broken leg, he might walk with a limp.

McMullan testified that he was working the midnight watch on December 21, 1975, in a marked squad car with his partner. He received an all-call radio broadcast as to the defendant early that morning. The broadcast stated defendant was wanted for a homicide committed on the 19th of December. The broadcast gave a physical description of a male Negro, 5'11", 170 pounds, described a 1967 black-over-green Cadillac and gave two possible addresses. McMullan went to the two addresses and at the rear of the second, 1514 South Christiana, saw a 1967 Cadillac with no license plate. At approximately 6:30 a.m. McMullan and his partner saw the defendant, who on observing the patrol car, began to walk away. Defendant walked with a limp.

McMullan testified he saw that defendant was a black man approximately 5'11". The two police officers then stopped the defendant and requested his name. The defendant stated he was "James Williams." When asked to produce identification, defendant showed identification with the name Willie Williams, and an address of 1514 South Christiana. The officers pointed at the aforementioned car and asked if defendant owned it and the defendant admitted the car was his.

McMullan testified that defendant was then placed under arrest and given the *Miranda* warnings. The defendant indicated that he understood his rights. McMullan and his partner had no warrant for defendant's arrest and when stopped defendant was not engaged in any illegal acts. No evidence was recovered from defendant's person or automobile.

Investigator John Laskey of the Chicago Police Department testified that with his partner he questioned the defendant in custody at 9 a.m. on December 21. Laskey said the defendant was informed of his rights and he indicated he understood them. In a 45-minute conversation, Laskey said defendant supplied the names of James Grooms and Ernestine Kirkwood. Later that afternoon Laskey and his partner went to Grooms' garage where they obtained a $100 bill from Grooms. That $100 bill is the physical evidence defendant seeks to suppress. Laskey also testified as to bringing the defendant sandwiches and coffee.

The defendant in this case testified that after his arrest he was handcuffed to the wall of an interrogation room. He was taken from the police Area 4 headquarters to the 11th and State headquarters for a polygraph examination at about 9 a.m. on the morning of December 21 by Investigator Hollins. After that he was taken to Grooms' garage but Grooms was absent. He was then returned to the interrogation room. Sometime after midnight, defendant was again interrogated by the police and was shown Maurice Smith and John Coleman, two witnesses who incriminated defendant in the robbery and murder. Defendant testified that he was left handcuffed to the wall in the interrogation room without food or drink until the next day. The next morning, December 22, at approximately 8 a.m. an assistant State's attorney explained to defendant his constitutional rights. Defendant thereafter signed a written statement prepared by a stenographer.

Prior to trial, defendant's counsel moved to quash the arrest and suppress all evidence and identification of witnesses as a result of the arrest and moved that all oral and written statements made by defendant subsequent to the arrest be suppressed. These motions were based on the alleged arrest of defendant without probable cause and his detention and interrogation. The court denied defendant's motion, stating:

"I have read and reviewed the evidence and read what I think is the case law that is applicable, and it is my contention a very close case, that the motion to suppress should be denied. I think that the officers did have probable cause to make the arrest from the totality of the circumstances, and in addition to that I would also rule in the alternative that if—if I do assume for a moment that the arrest was illegal, from the procedures that were followed in this rare, unique situation where normally the length of the incarceration might help the exploitation, if you would, on an illegal arrest and produce a statement or some type of confession, but the arrest placing the defendant in the police station, having other officers conduct an interrogation of him, the giving of the Miranda warnings, taking him from the station and back again, would in my opinion dilute the illegality and therefore give the statements and the evidence that was recovered a more voluntary character.

But as far as probable cause is concerned, I think that is the most important issue. The fact that there has been some testimony, the evidence did show there was some recent activity indicating that they were there, he was there in the apartment without the cane on the day of the offense, that personal property that was similar to that of the defendant was found at the scene, some evidence, which is just a bit of evidence as far as theft which occurred over a

year ago, that is very, very slight evidence in my opinion, which would help support the probable cause, and in addition to that the furtive character, movements or events or acts of giving the officer a different name upon being arrested, would all in my opinion support the theory of sufficient probable cause."

■■ We agree with the trial court and conclude that the motion to suppress was properly denied. *People v. Turner* (1976), 35 Ill. App. 3d 550, 342 N.E.2d 158.

"Arrest without a warrant is valid if a criminal offense has been committed and the arresting officer has reasonable grounds to believe that the person arrested committed the crime, or if the criminal offense is committed in the presence of the officer." (*People v. Catavdella* (1964), 31 Ill. 2d 382, 387, 202 N.E.2d 1.)

In the instant case, a crime had been committed and the officers had reasonable grounds to believe that the defendant committed the crime. In two different instances, defendant's description had been given to them. Defendant was seen near an address said to be his, and when he saw the marked police car, turned and walked away. Defendant fitted the physical description, walked with a limp and when asked for identification, falsely stated his name. From the totality of these circumstances, the officers had probable cause to arrest the defendant.

■■ Probable cause for an arrest does not require the degree of proof necessary for a conviction at trial. (*People v. Novak* (1965), 33 Ill. 2d 343, 211 N.E.2d 235, *cert. denied* (1966), 384 U.S. 1016, 16 L. Ed. 2d 1037, 86 S. Ct. 1985.) The test of probable cause is whether a reasonable and prudent person with the knowledge of the arresting officer would believe the person to be arrested is guilty of the crime. *People v. Macias* (1968), 39 Ill. 2d 208, 234 N.E.2d 783, *cert. denied* (1969), 393 U.S. 1066, 21 L. Ed. 2d 709, 89 S. Ct. 721.

On appeal, defendant cites *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, and its progeny, *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254. Both cases involved exploitation of illegal arrests and are distinguishable to the facts of this case. In *Wong Sun*, the Supreme Court said flight was not a sufficient inference of guilt for probable cause for arrest (371 U.S. 471, 484, 9 L. Ed. 2d 441, 453, 83 S. Ct. 407.) But there the officers had no arrest warrant and at 6 a.m. broke into a defendant's laundry when refused admission and followed the defendant into his living quarters where he gave an oral statement. In the instant case the defendant was arrested by uniformed policemen riding in a marked squad car. Officer McMullan stated as to defendant: "When we first observed him he was just standing. As we drove toward him he began to walk away." The police officers had reasonable grounds to stop the defendant since the police officers reacted

to a certain radio broadcast and other information received from other police officers. See *People v. Jackson* (1979), 77 Ill. App. 3d 117, 395 N.E.2d 976.

■ In *Brown v. Illinois* the court held that the *Miranda* warnings alone would not attenuate the taint of illegality from evidence found as the result of an illegal arrest. However, even if we assume, *arguendo*, that the arrest was illegal, the taint of the illegal detention was sufficiently attenuated to permit the use at trial of the statement and evidence.

In *People v. Faulisi* (1977), 51 Ill. App. 3d 529, 534, this court stated: "In *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, the United States Supreme Court again declined to adopt a "but for" rule and held that the attenuation of an unconstitutional arrest would be considered in the light of any intervening circumstances and, in particular, in light of the purpose and flagrancy of the official misconduct. In the case of *People v. Riszowski* (1974), 22 Ill. App. 3d 741, 746, 318 N.E.2d 10, the court stated that the illegality of an arrest will not itself require the automatic suppression of statements made by the accused subsequent to his arrest from evidence at trial. The court stated it would look to the intervention of other circumstances subsequent to the illegal arrests which would provide a cause so unrelated to the initial illegality that the acquired evidence may not reasonably be said to have been directly derived from the illegal arrest."

In *Wong Sun* there evolved three tests, any of which will establish that the evidence in question was not the fruit of the poisonous tree: (1) the evidence was discovered by an independent source; (2) the evidence was sufficiently distant in causal connection from the illegal search and seizure so that the connection has become so attenuated as to dissipate the taint; or (3) the evidence inevitably would have been gained even without the unlawful search. *United States ex rel. Owens v. Twomey* (7th Cir. 1974), 508 F.2d 858.

In this case the evidence sought to be suppressed inevitably would have been gained independent of defendant's arrest. Investigator Laskey was given the name of Marion Peters by a source other than the defendant. Marion Peters led police officers to Maurice Smith and Cecil Coleman who implicated defendant. Thereafter defendant gave his inculpatory statement. We find in accordance with the tests of *Wong Sun* and *Brown* that there was no official misconduct on the part of the police officer in the instant case. In addition, we are convinced from the record that the evidence of guilt of the defendant was sufficiently distant in causal connection from the alleged seizure without probable cause so as to dissipate any taint that may have existed.

The defendant has also cited *Dunaway v. New York* (1979), ___ U.S.

____, 60 L. Ed. 2d 824, 99 S. Ct. 2248. Defendant's reliance is misplaced. In that case the court stated, "[a]nd respondent State concedes that the police lacked probable cause to arrest petitioner before his incriminating statement during interrogation." (____ U.S. ____, ____, 60 L. Ed. 2d 824, 832, 99 S. Ct. 2248, 2253.) We have a different situation in this case, and the arrest was not an expedition for evidence in the hope that something might turn up.

This court will not reverse a trial court's finding of probable cause on a motion to suppress unless said finding is manifestly erroneous. (*People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280.) Defendant has not demonstrated that the trial court's finding was in error, and for the foregoing reasons, the defendant's conviction for murder and armed robbery is affirmed.

The judgment is affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.