Argued and submitted March 16, affirmed September 7, petition for review allowed
November 15, 1994 (320 Or 360)
See later issue Oregon Reports

In the Matter of
Daniel Mitchell, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Daniel MITCHELL,
*Appellant.*

(9201-80221; CA A78788)

880 P2d 958

Karen Torry argued the cause for appellant. With her on the brief was Julie H. McFarlane.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Child appeals from a dispositional order entered after he admitted that he was within the juvenile court's jurisdiction, because he committed acts that, if committed by an adult, would have constituted two counts of sodomy in the first degree. ORS 163.405. The order required child to submit to the drawing of a sample of his blood for deoxyribonucleic acid (DNA) testing pursuant to *former* ORS 419.507(11).[1] We review *de novo*, ORS 419A.200(5), and affirm.

Child makes two assignments of error. In his first assignment, child argues that the juvenile court erred in ordering him to submit to a blood draw pursuant to *former* ORS 419.507(11). He asserts that the warrantless extraction of blood violates his rights against unreasonable searches and seizures contained in Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution.[2] Those arguments were rejected in *State ex rel Juv. Dept. v. Orozco*, 129 Or App 148, 878 P2d 432 (1994). There, we held that drawing a small blood sample from a juvenile sex offender, pursuant to *former* ORS 419.507(11) does not violate Article I, section 9, of the Oregon Constitution or the Fourth Amendment to the United States Constitution.

Child also argues that *former* ORS 419.507(11) is unconstitutional, because it deprives him of his rights under the Due Process Clause of the United States Constitution.[3]

---

[1] The juvenile statutes applicable to these proceedings have since been repealed, *see* Or Laws 1993, ch 33, § 373, reenacted and renumbered. *See, e.g.*, ORS 419C.473.

[2] Article I, section 9, of the Oregon Constitution provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause * * *."

The Fourth Amendment to the United States Constitution, made applicable to the states pursuant to the Fourteenth Amendment, provides, in part:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause * * *."

[3] The Fourteenth Amendment to the United States Constitution provides, in part:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law * * *."

We address this argument, because it was not raised in *Orozco*.

■ Child appears to be arguing that the blood draw violates both his procedural and substantive due process rights. He invokes the procedural component of the Due Process Clause by asserting that

"[t]reatment is the *quid pro quo* which the state is constitutionally required to provide in return for deprivation of the child's liberty without providing the full array of due process protections afforded adult offenders."

His argument is based on an assertion that the blood draw and storage of his DNA profile in a criminal identification database will "label" him a sex offender. He argues that he will be labeled, because he will be told that he is a sex offender and his blood will be extracted "in the form of processing 'rituals' " or "labeling 'ceremonies.' " He asserts that those procedures will cause him to internalize "the perception of himself as criminal and deviant." According to child, the labeling will impair his ability to benefit from treatment and thereby eliminate the justification for not affording him the panoply of procedural due process rights.

We disagree with child's underlying assertion that the drawing of his blood and storage of his DNA profile pursuant to *former* ORS 419.507(11) will permanently label him a sex offender.[4] To the extent child is considered a sex

---

[4] *Former* ORS 419.507(11) provided, in part:

"(a) Whenever a child is found to be within the jurisdiction of the court under ORS 419.476(1)(a) for having committed an act which, if done by an adult would constitute a felony offense listed in ORS 137.076(1), the court shall order the child to submit to the drawing of a blood sample in the manner provided by ORS 137.076. The court shall further order that as soon as practicable after the entry of the dispositional order, the law enforcement agency attending upon the court shall cause a blood sample to be drawn and transmitted in accordance with ORS 137.076 * * *.

"(b) No order for the drawing and transmittal of a blood sample is required to be entered if:

"* * * * *

"(B) The court determines that drawing a sample would create a substantial and unreasonable risk to the health of the child."

ORS 137.076 (*since amended by* Or Laws 1993, ch 14, § 3; Or Laws 1993, ch 33, § 298 and Or Laws 1993, ch 301, § 3) requires the judgment to include an order stating that a blood sample is required to be drawn from adults convicted of certain listed offenses. After the sample is drawn, it is transmitted to the Department of State

offender, it is because he committed acts that would have constituted sodomy in the first degree, ORS 163.405, if an adult had committed them, not because his blood will be drawn and his DNA profile stored in a database. Because of his acts, child's juvenile adjudication record is specifically exempted from the ordinary confidentiality provisions for juvenile records. *Former* ORS 419.567(5). That record can be considered during a presentence investigation in adult criminal court or another juvenile proceeding. *Former* ORS 419.567(3)(a) and (b). In addition, child's record cannot be expunged. *See former* ORS 419.800(4)(j)(G); *former* ORS 419.805. Those statutory provisions demonstrate that child's acts and resulting record caused him to be labeled a sex offender. In short, child would be considered a sex offender even if his blood was not drawn, and his DNA profile was not stored permanently in a database.[5]

Furthermore, nothing in *former* ORS 419.507(11) requires that child be told that he is an incurable sex offender. In fact, child's attorney told the juvenile court, "I['m] going to advise my client that he's going to be permanently labeled as a sex offender." Child's attorney also said:

> "[Whether the child must be advised that he is a sex offender] is also an academic issue in this case because this child has been advised. This child has been before this court when this court has talked about the issue of whether or not he would have DNA testing and that would be a permanent part of his record."

Those statements suggest that discussion in court may have contributed to the labeling of child. Any such labeling is a further consequence of child's acts, not the drawing of his blood and storage of his DNA profile.

We reject child's assertion that the blood draw and stored DNA profile will label him a sex offender. His substantive due process argument is based on the same underlying

---

Police. ORS 181.085(1) (*since amended by* Or Laws 1993, ch 33, § 319 and Or Laws 1993, ch 469, § 4) authorizes that department to store the samples, analyze them to establish the genetic profile of the donor and maintain a criminal identification database containing information derived from the analysis.

[5] There is no evidence that the blood draw and stored DNA profile will cause any additional labeling of child.

assertion about labeling and its alleged detrimental affect on his treatment. Because we reject that assertion, his substantive due process argument also fails. *Former* ORS 419.507(11) does not violate the Due Process Clause.

■ In his second assignment, child argues, pursuant to *former* ORS 419.507(11)(b)(B), *supra* n 4, that the juvenile court erred in ordering him to submit to a blood draw, because it would create a substantial and unreasonable risk to his physical and mental health.[6] He asserts that the evidence showed that the blood draw would expose him to physical risks of bleeding in the skin and soreness in the area of the arm from which the blood is drawn. His argument that the blood draw poses a risk to his mental health flows from his contention that it will label him. He asserts that the blood draw and resulting labeling threatens his mental health, because of its "potentially negative impact on amenability to treatment."

Those alleged risks do not present substantial and unreasonable risks to either child's physical or mental health. The evidence shows there is a substantial risk that a blood draw will cause bleeding in the skin, bruising and soreness in the area where the blood is drawn. In other words, it is likely that the blood draw will cause child discomfort and some minor injuries.[7] There was no evidence that those injuries could be permanent or could in any way threaten child's physical health. Indeed, child said, "No," when the juvenile court asked him if he had experienced any problems from previously having his blood drawn. Because we conclude that the blood draw will not cause child to be labeled a sex offender, his argument that such labeling presents a substantial and unreasonable risk to his mental health also fails. The juvenile court did not err in ordering child to submit to a blood draw.

Affirmed.

---

[6] The juvenile court's order does not address this issue. However, child's attorney raised it during her closing argument. The deputy district attorney identified the source of the issue as "the outlet within the statute" and addressed it. The state does not argue that the issue is unpreserved. We therefore address it. *See State v. Cookman*, 127 Or App 283, 286, 873 P2d 335, *rev allowed* 319 Or 572 (1994).

[7] A pediatrician, testifying on behalf of child, said that "there's a greater than 50% probability that there will be some discomfort in the area for the next couple or three days."