No. 2--03--0162

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court 

OF ILLINOIS,       )   of Du Page County.

     )

Plaintiff-Appellee,     ) 

 )

v. ) No. 01--CF--3683

 ) 

 ) 

RAYMOND E. GARVIN, ) 

       ) Honorable,

 ) Perry R. Thompson,

Defendant-Appellant.   )   Judge, Presiding.

______________________________________________________________________________

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

Following a stipulated bench trial, the defendant, Raymond E. Garvin, was convicted of burglary (720 ILCS 5/19--1(a) (West 2000))
 and theft (720 ILCS 5/16--1(a)(1)(A) (West 2000))
 and sentenced to concurrent terms of 6½ years' imprisonment.  
Additionally, he was ordered to give a blood sample for genetic marker testing, pursuant to section 5--4--3 of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5--4--3 (West 2002)).  On appeal, the defendant argues that (1) the trial court erred in denying his pretrial motion to suppress evidence and (2) section 5--4--3 of the Code of Corrections is unconstitutional.  We affirm.  

On January 17, 2002, the defendant was charged by indictment with burglary, theft, and possession of burglary tools (720 ILCS 5/19--2(a) (West 2000)), in connection with an incident in which he was found in possession of a stolen van that contained $40,000 worth of stolen computer equipment.  Specifically, count I, the burglary charge, alleged that the defendant had knowingly and without authority entered a semi-tractor trailer belonging to Emery Worldwide, with the intent to commit a theft.   Count II, the theft charge, alleged that the defendant had stolen between $10,000 and $100,000 worth of computer equipment from Emery Worldwide.  Count III, the possession of burglary tools charge, alleged that the defendant possessed tools such as bolt cutters, a pry bar, heavy-duty shears, and two-way radios, with the intent to commit a theft.   

On March 22, 2002, the defendant filed a motion to suppress the evidence resulting from his stop by police.  On May 9, 2002, the trial court conducted a hearing on the motion to suppress.  Officer Henninger (his first name is not revealed in the record) of the Franklin Park police department was the sole witness.  Officer Henninger testified that at some time prior to 4:45 a.m. on December 29, 2001, he was on patrol, just west of Mannheim Road, when he received a message from dispatch that there was a complainant at the Amoco gas station on Mannheim Road.  The complainant was reporting that there was a van in the Amoco parking lot with license plates that had been stolen off of his company van. 

Officer Henninger proceeded to the Amoco parking lot.  He observed a white van with a CompUSA logo on the side, facing north.  Beside the van, facing south, was a white vehicle that Officer Henninger believed to be either a Ford Thunderbird or a Mercury Cougar.  Officer Henninger spoke with the complainant, Gerhardt Roth.  Roth pointed out the white CompUSA van.  Roth stated that he had noticed the van and a white car, which had been following the van, near his company, T & T Express.  Roth followed the van and the white car into the Amoco parking lot.  Roth pointed out three men who were in the parking lot.  According to Roth, all three men had been "in or around" the van.  Officer
 Henninger identified in court the defendant and his two codefendants, Michael Bennett and Lewis Taylor, as the three men whom Roth had pointed
 out in the Amoco parking lot.

After talking with Roth, Officer Henninger ran the license plates on the van and confirmed that they had been stolen.  Officer Henninger also ran the vehicle identification number on the van and learned that the van had been stolen.   After determining that the plates and the van had been stolen, Officer Henninger spoke with two of the three men, although he could not recall which two.  While he was speaking with the two men, Officer Henninger received a message that the Bensenville police department was looking for a white CompUSA van and a white Mercury Cougar that may have been involved in a theft from Emery Worldwide in Bensenville earlier that morning.  

  Officer Henninger determined that Taylor had an outstanding warrant for his arrest and arrested him.   Officer Henninger also arrested the defendant and Bennett for possession of the stolen vehicle and plates.  

On cross-examination, Officer Henninger admitted that two vehicles were towed from the Amoco parking lot, the white CompUSA van and a white Dodge Dynasty, which belonged to Taylor.

Following the hearing, the trial court denied the motion to suppress evidence obtained from the stop.  The trial court reasoned that probable cause existed to arrest the defendant because all three men arrived at the gas station at the same time, knew each other, and had been in and around the stolen van.

On February 7, 2002, the trial court conducted a stipulated bench trial.   Before the stipulated evidence was presented, the State agreed to nol-pros the possession of burglary tools charge.  Subsequently, the State and the defendant agreed that Paul Coken, an employee of Emery Wordwide, would testify that at around 3:40 a.m., on December 29, 2001, he observed a white van with a CompUSA logo on the side and a white passenger vehicle leaving Emery Worldwide's loading dock area.  The two vehicles had no business being in that area.  A semi-tractor trailer near the loading dock was being used to store computer equipment.  Coken notified police.  Several hours later, when the defendant and the van were apprehended, Coken was called by police to identify the contents of the van.  Coken identified several boxes of computer equipment that belonged to Emery Worldwide and had been in the semi-tractor trailer.  

   Several Franklin Park police officers would testify that they were dispatched to an Amoco gas station to investigate a case concerning a white Comp. USA van with stolen license plates.  When they arrived at the gas station, they found the defendant, Bennett, and Taylor.  Taylor was sitting in a white passenger vehicle.  The defendant and Bennett were inside the gas station, buying lottery tickets.  The police officers found the defendant's wallet and an article of Bennett's clothing inside the CompUSA van.  The police officers also found COBRA hand-held, two-way radios in the van.  The police officers found a matching radio in the white passenger car.  After he was arrested, the defendant admitted to Franklin Park police that he was in the area of Emery Worldwide earlier that morning.   

Finally, Sergeant Hawkins of the Bensenville police department would testify that Emery Worldwide is located in Bensenville, which is in Du Page County, Illinois.  She would further testify that after the defendant was arrested, he requested that his wallet be retrieved from the CompUSA van.    

Following the stipulated testimony, the trial court found the defendant guilty of burglary and theft.  The trial court sentenced the defendant to 6½ years' imprisonment for each offense, the sentences to run concurrently.  It ordered the defendant to submit a blood sample for genetic marker testing pursuant to section 5--4--3 of the Code of Corrections (730 ILCS 5/5--4--3 (West 2002))
. 
  Following the denial of his posttrial motions, the defendant timely appealed.  

The defendant's first argument on appeal is that the trial court erred in denying his motion to suppress the evidence from his stop.  The defendant argues that the police lacked probable cause when they arrested him for possession of the stolen vehicle.  He argues that incriminating statements that he made to the police subsequent to his arrest, such as asking for his wallet and admitting that he was in the area of Emery Worldwide, were "fruits of the poisonous tree."

Before addressing the merits of the defendant's argument, we must first establish the proper standard of review, on which the parties disagree.  Generally, a ruling on a motion to suppress is subject to the manifest error standard of review.  
People v. Scott
, 249 Ill. App. 3d 597, 601 (1993).   However, pursuant to 
Ornelas v. United States
, 517 U.S. 690, 134 L. Ed. 2d 911, 116 S. Ct. 1657 
(1996), 
when a motion to suppress turns on a question of reasonable suspicion or probable cause,   a different standard of review applies.  The 
Ornelas
 Court held that when an appellate court reviews a ruling on a motion to suppress involving a question of probable cause or reasonable suspicion, the reviewing court should review 
de
 
novo
 the ultimate finding with respect to probable cause or reasonable suspicion.  
Ornelas
, 517 U.S. at 699, 134 L. Ed. 2d at 920, 116 S. Ct. at 1663
.  The Court cautioned, however, that findings of historical fact should be reviewed only for clear error and that reviewing courts must give due weight to inferences drawn from those facts by the fact finder
.  
Ornelas
, 517 U.S. at 699, 134 L. Ed. 2d at 920, 116 S. Ct. at 1663
. 
 Because the parties agree on the facts of the case, we apply only the 
de
 
novo
 standard of review.

In order to make a valid, warrantless arrest, a police officer must have probable cause to arrest.  
People v. Robinson
, 167 Ill. 2d 397, 405 (1995).  Probable cause exists when facts exist that would lead a reasonable person, standing in the shoes of the police officer, to conclude that a crime has been committed and that the defendant was the person who committed the crime.  
People v. Drake
, 288 Ill. App. 3d 963, 967 (1997).  The existence of probable cause depends upon the totality of the circumstances at the time of the arrest.  
People v. Scott
, 249 Ill. App. 3d 597, 601 (1993).  "In dealing with probable cause[,] we deal with probabilities.  These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act."  
People v. Fox
, 155 Ill. App. 3d 256, 262 (1987).

In a motion to suppress, the initial burden of proof is on the defendant.  
People v. Bobiek
, 271 Ill. App. 3d 239, 241 (1995).  However, once the defendant submits evidence that shows that at the time of the arrest, he was doing nothing unusual (his conduct was not indicative of the commission of a crime) and he was arrested without a warrant, the defendant has made a 
prima
 
facie
 case that the police lacked probable cause.  
Drake
, 288 Ill. App. 3d at 967;  
People v. Garcia
, 94 Ill. App. 3d 940, 942-43 (1981).  
The burden then shifts to the State to show that the warrantless arrest was based on probable cause; in other words, the State must demonstrate that the police had reasonable grounds to believe that the defendant had committed a crime.  
Drake
, 288 Ill. App. 3d at 967;  
Garcia
, 94 Ill. App. 3d at 942-43.

A person's mere proximity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search or seize that person.  
Drake
, 288 Ill. App. 3d at 968
.  Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.  
Ybarra v. Illinois
, 444 U.S. 85, 91, 62 L. Ed. 2d 238, 245, 
100 S. Ct. 338, 342 (1979).  This requirement cannot be undercut or avoided by showing that there existed probable cause to search or seize another person who was near the premises where the person happened to be.  
Ybarra
, 444 U.S. at 91, 62 L. Ed. 2d at 245, 
100 S. Ct. at 342.

In this case, we do not believe that the police had probable cause to arrest the defendant.  When they arrested him, the police knew merely 
that the defendant had been "in or around" a stolen van.  This sole fact did not warrant the defendant's arrest.  The defendant could have been in or around the van for any number of lawful reasons.  The fact that the defendant was in or around the van warranted reasonable suspicion, a standard less than probable cause, which would have entitled the police to question the defendant and investigate the situation further.  Instead of doing so, however, the police simply arrested the defendant.  Because the police lacked probable cause when they arrested the defendant, the trial court should have suppressed any harmful statements made by the defendant subsequent to his arrest.  

That said, we do not believe that the trial court's failing to grant the motion to suppress  warrants a reversal of the defendant's burglary and theft convictions.  We believe that the error was harmless.  An error is harmless where the reviewing court is satisfied beyond reasonable doubt that the error did not contribute to the defendant's conviction.  
People v. St. Pierre
, 122 Ill. 2d 95, 113-14 (1988);
 People v. Laliberte
, 246 Ill. App. 3d 159, 172 (1993).  In determining whether an error is harmless, it is necessary to review the facts of the case and the evidence at trial to determine the effect of the unlawfully admitted evidence upon the other evidence adduced at trial and upon the conduct of the defense.  
St. Pierre
, 122 Ill. 2d at 114, citing 
Fahy v. Connecticut
, 375 U.S. 85, 87, 11 L. Ed. 2d 171, 173-74, 84 S. Ct. 229, 230-31
(1963).  Indeed, an error in admitting evidence at trial does not require a reversal of a conviction where the remaining evidence is sufficient to convict beyond a reasonable doubt.  See 
People v. Parker
, 192 Ill. App. 3d 779, 782 (1989).     

In reviewing the facts of the present case, the defendant's request for his wallet and his admission that he was in the area of Emery Worldwide were not material to the trial court's guilty finding.  Other competent evidence that was introduced at the trial overwhelmingly established the defendant's guilt beyond reasonable doubt.  For instance, in the early morning of December 29, 2001, an employee of Emery Worldwide in Bensenville observed a white van with a CompUSA logo on the side and a white passenger vehicle near Emery Worldwide's loading dock.  Computer equipment was being stored in that area in a semi-tractor trailer.  
The police found a white van with a CompUSA logo and a white passenger vehicle in the Amoco parking lot in nearby Franklin Park.  Police determined that the van was stolen.  The defendant and two companions were found around the stolen van.  Police inventoried the contents of the van and found $40,000 worth of computer equipment belonging to Emery Worldwide, a wallet stipulated by the defendant to be his, an article of clothing belonging to one of the codefendants, and hand-held, two-way radios.  The police found a matching hand-held radio in a passenger vehicle, which was being driven by the other codefendant
.  
The above evidence was all admissible and would not have been subject to exclusion as fruit of the poisonous tree because it either
 was discovered by an independent source, was sufficiently distant in causal connection from the illegal seizure, or inevitably would have been discovered even absent the unlawful arrest.   See 
People v. Williams
, 79 Ill. App. 3d 817, 822 (1979).  

We note that in his brief, the defendant argues that there was nothing in the wallet that was found in the van that would have identified him as the wallet's owner.  The defendant argues that without any evidence to link him to the wallet, the evidence would have been insufficient to convict him.  First, there is nothing in the record to confirm the defendant's assertion regarding the wallet.  Regardless, the defendant cannot now claim that the wallet was not his, because he stipulated at the trial that it was.  
  

In summary, because there was sufficient and competent evidence presented at the trial that clearly established the defendant's guilt, the trial court's admission of the defendant's two statements was harmless.  Thus, the defendant's first contention is without merit.  

The defendant's next contention is that section 5--4--3 of the Code of Corrections is unconstitutional.  Section 5--4--3 of the Code of Corrections mandates DNA sampling from all persons "convicted or found guilty of any offense classified as a felony under Illinois law."  730 ILCS 5/5--4--3(a) (West 2002).  Such persons "shall, regardless of the sentence or disposition imposed, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police in accordance with the provisions of this Section."  730 ILCS 5/5--4--3(a) (West 2002).  
The purpose of section 5--4--3 is to establish a data bank of genetic identity of recidivist criminal offenders.  See generally 730 ILCS 5/5--4--3 (West 2002).  
 

As a preliminary matter, the State argues that the defendant has waived his second contention by failing to contemporaneously object or raise the issue in a posttrial motion. See 
People v. Robinson
, 157 Ill. 2d 68, 83 (1993).  Although the defendant did fail to raise it in the trial court, his contention raises an issue of fundamental constitutional concern.  We therefore review the contention, one that presents an issue of first impression in Illinois, for plain error. 

The fourth amendment, applicable to the states through the fourteenth amendment, provides all people with the right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. 
 U.S. Const., amend. IV.  
The salutary purpose of the fourth amendment is to ensure "privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction."  
Skinner v. Ry. Labor Executives' Ass'n
, 489 U.S. 602, 613-14, 103 L. Ed. 2d 639, 657, 
109 S. Ct. 1402, 1411 (1989).  Analysis of a biological sample is a search within the meaning of the fourth amendment.  
Skinner
, 489 U.S. at 616, 103 L. Ed. 2d at 659,
 109 S. Ct. at 1412-13; 
Schmerber v. California
, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 
(1966).  

We note that all 50 states and the District of Columbia have enacted genetic marker testing statutes.  See Ala. Code §36--18--20 (2002); Alaska Stat. §44.41.035 (2002); Arizona Rev. Stat. Ann. §13--610 (West 2002); Ark. Code Ann. §12--12--1102 (Michie 2002); Cal. Penal Code §295 (West 2002); Colo. Rev. Stat. §16--11--102.3 (2002); Conn. Gen. Stat. §54--102g (2002), amended by 2004 Conn. Legis. Serv. Pub. Act. 04--188 (West) (H.B. 5662); Del. Code Ann. tit. 29, §4913 (2002); D.C. Code Ann. §22--4133 (2002); Fla. Stat. ch. 943.325 (2002); Ga. Code Ann. §24--4--60 (2002), amended by 2004 Ga. Laws 523 (S.B. 482); Haw. Rev. Stat. §706--603 (2002); Idaho Code §19--5506 (2002), amended by 2004 Idaho Sess. Laws 157 (H.B. 520);  Ind. Code §10--13--6--10 (2002); Iowa Code §13.10 (2002); Kan. Stat. Ann. §21--2511 (2002), amended by 2004 Kan. Sess. Laws 11 (H.B. 2542); Ky. Rev. Stat. Ann. §17.170 (Banks-Baldwin 2002);  La. Rev. Stat. Ann. §15:603 (West 2002); Me. Rev. Stat. Ann. tit. 25, §1574 (West 2002); Md. Code Ann. Public Safety §2--502 (2002); Mass. Gen. Laws 22E, §3 (2002), amended by 2003 Mass. Legis. Serv. 107 (West) (S.B. 187); Mich. Comp. Laws §750.520m (2002); Minn. Stat. Ann. §609.117 (West 2002); Miss. Code Ann. §45--33--37 (2002); Mo. Rev. Stat. §650.055 (2002); Mont. Code Ann. §44--6--101 (2002); Neb. Rev. Stat. §29--4103 (2002); Nev. Rev. Stat. 176.0913 (2002); N.H. Rev. Stat. Ann. §651--C:1 (2002); N. J. Rev. Stat. §53:1--20.20 (2002); N.M. Stat. Ann.  §29--16--6 (2002); N.Y. Executive Law §995--c (McKinney 2002); N.C. Gen. Stat. §15A--266.2 (2002); N.D. Cent. Code §31--13--03 (2002); Ohio Rev. Code Ann. §2901.07 (Anderson 2002); Okla. Stat. tit. 74, §150.27a (2002), amended by 2004 Okla. Sess. Law Serv. 143 (West) (S.B. 1374);  Or. Rev. Stat. §181.085 (2002); 42 Pa. Cons. Stat. § 4716 (2002); R.I. Gen. Laws §12--1.5--1 (2002); S.C. Code Ann. §23--3--620 (2002), amended by 2004 S. C. Acts  230 (H.B. 3594); S.D. Codified Laws Ann. §23--5A--5 (2002); Tenn. Code Ann. §40--35--321 (2002); Tex. Gov't Code Ann. §411.148 (West  2002); Utah Code Ann. §53--10--401 (2002), amended by 2004 Utah Laws 200 (H.B. 93); Vt. Stat. Ann. tit. 20,  §1933 (2002); Va. Code Ann. §19.2--310.2 (West 2002); Wash. Rev. Code §43.43.754 (2002); W. Va. Code §15--2B--6 (2002); Wis. Stat. §973.047 (2002); Wyo. Stat. §7--19--403 (2002).

These statutes have been challenged in courts of numerous jurisdictions.  All, to date, have been held to be constitutional.  See 
Velasquez v. Woods
, 329 F.3d 420 (5th Cir. 2003);
 
D.B. v. State
, 861 So. 2d 4 (Ala. Crim. App. 2003); 
Schreiber v. State
, 666 N.W.2d 127 (Iowa 2003);
 
State v. Maass
, 275 Kan. 328, 64 P.3d 382 (2003); 
State v. Leppert
, 656 N.W.2d 718 (N.D. 2003); 
State v. Steele
, 155 Ohio App. 3d 659, 802 N.E.2d 1127 (2003)
; 
In re D.L.C.
, 124 S.W.3d 354 (Tex. Ct. App. 2003)
; 
L.S. v. State
, 805 So. 2d 1004 (Fla. App. 2001); 
Patterson v. State
, 742 N.E.2d  4 (Ind. App. 2000); 
Gaines v. State
, 116 Nev. 359, 998 P.2d 1662 (2000); 
Johnson v. Commonwealth
, 259 Va. 654, 529 S.E.2d 769 (2000); 
Roe v. Marcotte
, 193 F.3d 72 (2d Cir. 1999);
 
Landry v. Attorney General
, 429 Mass. 336, 709 N.E.2d 1085 (1999); 
Dial v. Vaughn
, 733 A. 2d 1 (Pa. 1999);  
Doles v. State
, 994 P.2d 315 (Wyo. 1999); 
Cooper v. Gammon
, 943 S.W. 2d 699 (Mo. App. 1997); 
Schlicher v. (NFN) Peters, I&I
, 103 F.3d 940 (10th Cir. 1996);
  
In re Maricopa County Juvenile Action Nos. JV--512600 & JV--512797
, 187 Ariz. 419, 930 P.2d 496 (App. 1996); 
Rise v. Oregon
, 59 F.3d 1556 (9th Cir. 1995); 
State ex rel. Juvenile Department v. Mitchell
, 130 Or. App. 134, 880 P.2d 958 (1994); 
State v. Olivas
, 122 Wash. 2d 73, 856 P.2d 1076 (1993);
 
Jones v. Murray
, 962 F.2d 302 (4th Cir. 1992).

In considering the issue of genetic marker testing, the foregoing courts have taken two approaches in their fourth amendment analyses, those being a balancing test (see, 
e.g.
,  
Gaines
, 116 Nev. 359, 998 P.2d 1662
) and a special needs test (see, 
e.g.
, 
Olivas
, 122 Wash. 2d 73, 856 P.2d 1076)
.  The balancing test refers to balancing the governmental need for the action against the privacy concern of the individual affected.  
People v. Wealer
, 264 Ill. App. 3d 6, 13 (1994).  The special needs test is similar, although it allows the governmental interest to supersede the individual's privacy concern if the action serves a governmental need "beyond normal law enforcement."  
Wealer
, 264 Ill. App. 3d at 11. 
 A majority of courts have applied the balancing approach. A minority of courts have determined that genetic marker testing falls within the special needs doctrine.

This court has previously rejected the special needs approach in favor of the balancing approach.  See 
Wealer
, 264 Ill. App. 3d at 12. 
 We again deem the reasoning of the balancing approach more persuasive and so apply that test here.  With respect to the balancing approach, the State's interest in the search and seizure is balanced against the individual's expectation of privacy and the intrusive nature of the search.  
Wealer
, 264 Ill. App. 3d 
at 17.  In regard to the State's interest, it is beyond dispute that the State has a strong interest in deterring and prosecuting recidivist criminal acts.  
In re Robert K.
, 336 Ill. App. 3d 867, 871 (2003);  
Wealer
, 264 Ill. App. 3d 
at 17.
  Section 5--4--3 of the Code of Corrections is closely related to this interest. 
  Mandatory DNA testing of convicted felons is a precise technological method of identifying and eliminating potential suspects.  
Robert K.
, 336 Ill. App. 3d at 871; 
Wealer
, 264 Ill. App. 3d 
at 17.
 
 DNA identification has been likened to a fingerprint.  See 
Landry v. Attorney General
, 429 Mass. at 346-47, 709 N.E.2d at 1092.
  While some differences exist, they are both identity markers.  DNA is more conclusive and "can practically guarantee a 100% certain identity."  
Miller v. United States Parole Comm'n
, 259 F. Supp. 2d 1166, 1177-78 (D. Kan. 2003).

With regard to the defendant's expectation of privacy, it is well established that convicted persons, including those on probation, lose some rights to personal privacy that would otherwise be protected under the fourth amendment.  
Griffin v. Wisconsin
, 483 U.S. 868, 880, 97 L. Ed. 2d 709, 722, 107 S. Ct. 3164, 3172
 (1987); 
Hudson v. Palmer
, 468 U.S. 517, 530, 82 L. Ed. 2d 393, 
405, 104 S. Ct. 3194, 3202 (1984).  Courts have reasoned that once a person is convicted of one of the felonies enumerated in a genetic marker testing statute, his or her identity has become a matter of state interest and he or she has lost any legitimate expectation of privacy in the identifying information derived from the bodily  sampling.  
Gaines
, 116 Nev. 359, 998 P.2d 1662
; 
Rise
, 59 F.3d at 1560. 

As to the intrusive nature of the search, courts considering fourth amendment challenges have universally determined that a blood draw from a convicted person to gather genetic information for identification involves only a minimal intrusion. See, 
e.g.
, 
Gaines
, 116 Nev. at 370, 998 P. 2d at 172.
  It is widely accepted that a blood draw is not an "unduly extensive imposition" (
Winston v. Lee
, 470 U.S. 753, 762, 84 L. Ed. 2d 662, 670, 105 S. Ct. 1611, 1617
 (1985)
) and "would not be considered offensive by even the most delicate" (
 
Breithaupt v. Abram
, 352 U.S. 432, 436, 1 L. Ed. 2d  448, 451, 77 S. Ct. 408, 410 
(1957)).  Indeed, this court has previously determined that the physical intrusion imposed by the DNA testing mandated by section 5--4--3 of the Code of Corrections "is relatively slight and poses no threat to the health or safety of the individual tested."  
Wealer
, 264 Ill. App. 3d 
at 17, citing
 
People v. Adams
, 149 Ill. 2d 331, 346 (1992).

Consistent with the foregoing considerations, we find that section 5--4--3 of the Code of Corrections is not unconstitutional. 
 The public has a significant interest in preventing recidivism and accurately determining guilt or innocence in such cases.  The identity of a person convicted of a crime is a matter of state interest.  Upon conviction of a felony, a defendant loses any legitimate expectation of privacy in identifying information that is derived from bodily sampling used for law enforcement and deterrent purposes.  The physical intrusion caused by such DNA tests is slight and virtually risk free.   In conclusion, 
the State's interest in deterring and prosecuting recidivist criminal acts strongly outweighs a convict's 
diminished right to privacy and the minimal intrusion caused by the submission of a blood, saliva, or tissue sample as required by section 5--4--3 of the Code of Corrections.  
 
For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.   Affirmed.

McLAREN and HUTCHINSON, JJ., concur.