No. 2--04--0660

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 02--CF--2575 |
| CHRISTOPHER R. SALINAS, | ) ) ) | Honorable Patricia Piper Golden, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

Following a jury trial, the defendant, Christopher R. Salinas, was convicted of two counts of concealment of a homicidal death (720 ILCS 5/9--3.1 (West 2002)). The defendant was sentenced to two concurrent terms of 52 months' imprisonment and ordered to give a blood sample for genetic marker testing pursuant to section 5--4--3 of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5--4--3 (West 2002)). On appeal, the defendant argues that he was not convicted beyond a reasonable doubt of one of the counts of concealment of a homicidal death, because the evidence showed that the victim was still alive when the concealment occurred. The defendant additionally argues that section 5--4--3 of the Code of Corrections is unconstitutional. We affirm in part and reverse in part.

On December 23, 2002, the defendant was charged by indictment with four counts of first degree murder (720 ILCS 5/9--1(a)(1), (a)(2) (West 2002)), four counts of felony murder (720 ILCS 5/9--1(a)(3) (West 2002)), one count of aggravated vehicular hijacking (720 ILCS 5/18--4(a)(4) (West 2002)), two counts of aggravated arson (720 ILCS 720 5/20--1.1(a)(1), (a)(2) (West 2002)), and two counts of concealment of a homicidal death (720 ILCS 5/9--3.1 (West 2002)) for the shooting death and cover-up of the death of Angjel Marko and Klaudio Mara. Counts XII and XIII of the indictment, charging the defendant with concealment of a homicidal death, alleged that on July 8, 2002, the defendant had set a motor vehicle occupied by Marko and Mara on fire, with knowledge that Marko and Mara had died by homicidal means.

The trial court conducted a jury trial on April 5, 2004. The evidence at trial established as follows. A few days prior to July 8, 2002, the defendant's parents and younger brother had gone away on vacation, leaving the defendant and his older sister at home in Aurora. During the evening of July 8, 2002, the defendant had several friends over to his home and the gathering evolved into a party. Around midnight, Marko and Mara arrived in Marko's newly purchased 1995 Mercedes. Mara asked to talk with Brenda Angeles, a guest at the party.

After some persuading, Angeles got into Marko's Mercedes to talk to Mara. Before Angeles could get out of the car, Marko, who was driving, sped away. When the defendant and his friend Henry Samaniego realized that Angeles was missing from the party, they took Angeles' car and began looking for her. The defendant and Samaniego spotted Angeles at a nearby intersection. Angeles, who had managed to get out of Marko's car

when it had stopped at a stop sign, got into the car with the defendant and Samaniego and returned to the party.

Once back at the party, the defendant asked Frank Aquino, another one of his guests, for the gun he had seen Aquino with earlier in the evening. Aquino, carrying the gun, followed the defendant outside the house. When the defendant and Aquino were standing on the front porch, Marko and Mara pulled into the driveway. The defendant approached the passenger side of the car and Aquino approached the driver's side of the car. The defendant spoke with Mara and eventually shook his hand.

While the defendant was shaking Mara's hand, Aquino shot Marko in the head. Marko slumped over the steering wheel, apparently unconscious. Marko's car started to roll backwards because Marko had just put the car in reverse. Mara reached for the steering wheel and Aquino then shot Mara in the head. The car rolled down the driveway and into a fence across the street. Aquino pushed Marko's body over on top of Mara's body and got into the driver's seat. Aquino told the defendant to get in the car and the defendant got in the back seat.

Aquino drove Marko's car to an industrial park near Austin Avenue and Rural Street in Aurora and left it there. The defendant and Aquino then walked to Aquino's house, which was a few blocks away. Aquino retrieved from the basement of his house some keys to a small blue car that was parked near the house. Aquino then filled a gas can with gas and put the gas can in the trunk of the blue car. Aquino and the defendant drove the blue car back to the industrial park. At the industrial park, Aquino directed the defendant to pour gasoline in the Mercedes. The defendant began pouring the gasoline in the car, but Aquino took over because he wanted the gasoline poured on the bodies.

The evidence as to who actually set the car on fire was conflicting.  Samaniego testified that the defendant had told him that he set the car on fire with a book of matches. According to the defendant's own testimony and the admissions the defendant made to police, Aquino tried to light a piece of paper with a cigarette lighter but the lighter did not work very well.  As such, Aquino and the defendant drove back to the defendant's house, where Aquino told the defendant to get another lighter.  The defendant retrieved a lighter from within his house and as instructed by Aquino gave the lighter to another guest at the party named Tony.  Tony had come to the defendant's party with Aquino in Aquino's Lincoln Town Car.  Aquino and Tony then left the party in the blue car.  The defendant drove Aquino's Lincoln back to Aquino's house and never went back to the industrial park.

Early morning July 9, 2002, as dawn was breaking, police discovered Marko's Mercedes on fire in the industrial park with Marko's and Mara's bodies inside the car. Autopsies showed that each had died from a single gunshot wound to the head.  However, the autopsy on Marko revealed that he had been alive when the fire was started.  The coroner's physician explained that Marko had soot in his airway and carbon monoxide in his blood and must have inhaled smoke from the fire.  During its closing argument, the State reminded the jury that the autopsy results showed that Marko was still alive when the car was set on fire.

Following the presentation of the above evidence, the jury was instructed on the charges of felony murder based on aggravated arson, aggravated arson, and concealment of a homicidal death. The trial court directed verdicts of acquittal on the first degree murder charges. The State had nol-prossed, prior to trial, the aggravated vehicular hijacking charge and two felony murder counts based on aggravated vehicular hijacking.  The jury was also

instructed on the theory of accountability and on the affirmative defense of compulsion. The jury found the defendant not guilty on the two charges of felony murder and the charge of aggravated arson, but guilty on both charges of concealment of a homicidal death.

Following a sentencing hearing, the trial court sentenced the defendant to two concurrent terms of 52 months' imprisonment. The trial court also mandated that the defendant submit to DNA testing pursuant to section 5--4--3 of the Code of Corrections (730 ILCS 5/5--4--3 (West 2002)). Following the denial of his posttrial motions, the defendant filed a timely notice of appeal.

The defendant's first contention on appeal is that he was not convicted beyond a reasonable doubt of the concealment of the homicidal death of Marko, because Marko was still alive when the concealment occurred.

It is not the function of the reviewing court to retry a defendant when considering a challenge to the sufficiency of the evidence. *People v. Collins*, 106 Ill. 2d 237, 261 1985 . A criminal conviction will not be set aside on the grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there remains reasonable doubt of the defendant s guilt. *People v. Hobley*, 159 Ill. 2d 272, 313 1994 *People v. Tye*, 141 Ill. 2d 1, 13 1990 . The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261. The determination of the weight to be given to the witnesses testimony, their credibility, and the reasonable inferences to be drawn from the evidence is the responsibility of the trier of fact. *People v. Steidl*, 142 Ill. 2d 204, 226 1991 *Collins*, 106 Ill. 2d at 261. This standard applies whether the evidence is direct or circumstantial and whether the conviction is the result of a jury trial or a bench trial. *People v. Cooper*, 194 Ill. 2d 419, 431 2000 .

The offense of concealment of a homicidal death is defined as such: "A person commits the offense of concealment of homicidal death when he conceals the death of any other person with knowledge that such other person has died by homicidal means." 720 ILCS 5/9--3.1 (West 2002). Two elements must be established in order to sustain a conviction of concealment of a homicidal death: (1) knowledge that a homicidal death has occurred and (2) an affirmative act of concealment of the death. People v. Fenderson, 157 Ill. App. 3d 537, 544 (1987). The question becomes whether, in order to establish the first element of the crime, it must be proved that the victim was deceased when the act of concealment occurred.

In Fenderson, the Illinois Appellate Court, Fifth District, was confronted with a situation where the victim was still alive when the concealment occurred. In that case, the defendant was convicted of both murder and concealment of a homicidal death for beating the victim to death and then scalding the victim in a hot shower to conceal the beating. Fenderson, 157 Ill. App. 3d at 540-44. The defendant appealed the conviction of the concealment, arguing that the victim was not dead when the scalding occurred. Fenderson, 157 Ill. App. 3d at 544. The reviewing court reversed the defendant's concealment conviction, noting that the concealment statute requires that the concealment occur "with knowledge" that the person "has died." Fenderson, 157 Ill. App. 3d at 544-45. The reviewing court further noted that a criminal statute must be construed strictly in favor of an accused and, thus, that nothing should be taken by implication against the accused beyond the obvious or literal meaning of the statute. Fenderson, 157 Ill. App. 3d at 544. Accordingly, in line with the plain language of the statute, the reviewing court determined that the offense of concealment of a homicidal death requires that the victim be deceased

at the time of the concealment. Fenderson, 157 Ill. App. 3d at 544. We find the reasoning in Fenderson to be persuasive.

In this case, like Fenderson, one of the victims apparently had not died when the act of concealment occurred. The coroner's physician testified that Marko had soot in his airway and carbon monoxide in his blood and, thus, was alive when the car was started on fire. The State even reminded the jury of such during its closing argument. Because Marko had not yet died when the defendant undertook the act of concealment, the defendant was not proved guilty beyond a reasonable doubt of concealing Marko's homicide. Therefore, the defendant's conviction of and sentence for the concealment of Marko's homicide must be reversed. We take note of the State's position that it seems incomprehensible that a defendant may escape a conviction of concealment of a homicidal death just because the victim may not have been dead when the defendant undertook acts to conceal a homicide. However, any defect in the statute must be cured by the legislature.

The defendant's final contention on appeal is that section 5--4--3 of the Code of Corrections is unconstitutional. This argument is without merit. In *People v. Garvin*, 349 Ill. App. 3d 845, 853-56 2004, this court upheld the validity of the statute that the defendant challenges. Recently, the Illinois Supreme Court affirmed this court's determination that section 5--4--3 of the Code of Corrections is constitutional. People v. Garvin, No. 99031, slip. op. at 16 (March 23, 2006). Our supreme court explained that the State s interest in effective crime investigations and prevention, as advanced by section 5--4--3 of the Code of Corrections, outweighs a defendant s privacy interests as a convicted felon. Garvin, slip. op. at 16. Accordingly, we reject the defendant s challenge to the constitutionality of section 5--4--3 of the Code of Corrections.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed as to count XIII charging the defendant with concealing the homicide of Mara and reversed as to count XII charging the defendant with concealing the homicide of Marko.

Affirmed in part and reversed in part.

BYRNE and KAPALA, JJ., concur.