SECOND DIVISION
January 24, 2005

No. 1-04-2680

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| STANTON ADAMS, | ) | Honorable |
| | ) | James D. Egan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE WOLFSON delivered the opinion of the court:

Following a bench trial, the defendant was convicted of involuntary manslaughter, usually considered a Class 3 felony. Because the victim was the defendant's son, the offense was elevated to a Class 2 felony. 720 ILCS 5/9-3(f) (West 2000). Defendant was sentenced to 12 years in prison. The major issue in this case is whether the change in class violates the defendant's right to due process of law. We conclude it does not.

FACTS

On February 28, 2001, defendant was taking care of his son, Stanton Adams, Jr. Stanton was two months old. According to defendant, he began bouncing Stanton on his knee and tossing him in the air. The last time defendant tossed Stanton in the air and tried to catch him, Stanton slipped through his hands, hit the side of a sofa, and fell to the floor. Defendant picked Stanton up. When Stanton did not respond, defendant

˘1˘

1-04-2680

panicked and began shaking him.  Defendant then attempted CPR.  After Stanton did not respond, defendant wrote several suicide notes and attempted to kill himself.  Dr. Nancy Jones, assistant medical examiner for Cook County, described Stanton's extensive injuries.  Jones opined Stanton died "as a result of cerebral injuries due to blunt head trauma due to child abuse."

The trial court found defendant guilty of involuntary manslaughter.  At the sentencing hearing, the trial court found it was undisputed that the victim and defendant shared a father-son relationship.  The offense was then elevated from a Class 3 felony to a Class 2 felony pursuant to section 9-3(f) of the Unified Criminal Code (Code).  720 ILCS 5/9-3(f) (West 2000).  After reviewing the presentence investigation report and hearing arguments of counsel, the trial court sentenced defendant to 12 years' imprisonment and imposed a $5,000 fine.  The court noted defendant spent 1,199 days in custody before the conviction, but did not credit those days against the fine.

DECISION

I. Section 9-3(f)

Defendant contends section 9-3(f) is unconstitutional because it violates his right to due process.  He contends the statute bears no rational relationship to the legislature's stated purpose, to fight and deter domestic violence.

Section 9-3(a) states: "A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly."  720 ILCS 5/9-3(a) (West

2000). Involuntary manslaughter is generally a Class 3 felony (720 ILCS 5-9-3(d)(1) (West 2000)) for which the penalty is "not less than 2 years and not more than 5 years" (730 ILCS 5/5-8-1(a)(6) (West 2000)). Section 9-3(f), however, provides:

> "In cases involving involuntary manslaughter in which the victim was a family or household member ***, the penalty shall be a Class 2 felony, for which a person if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 3 years and not more than 14 years." 720 ILCS 5/9-3(f) (West 2000).

All statutes are presumed to be constitutional. People v. Wilson, 214 Ill. 2d 394, 398-99, 827 N.E.2d 416 (2005). The party challenging a statute's validity bears the burden of clearly demonstrating a constitutional violation. Wilson, 214 Ill. 2d at 399. If reasonably possible, a court should construe a statute so as to confirm its constitutionality and validity. Wilson, 214 Ill. 2d at 399. Whether a statute is constitutional is a question of law we review de novo. People v. Malchow, 193 Ill. 2d 413, 418, 739 N.E.2d 433 (2000).

Under the State's police power, the legislature has wide discretion to establish penalties for criminal offenses. People v. Morris, 136 Ill. 2d 157, 161, 554 N.E.2d 235 (1990). Legislation will not be invalidated "'unless the challenged penalty is clearly in excess of the very broad and general constitutional limitations applicable.'" Morris, 136

Ill. 2d at 161, quoting <u>People ex rel. Carey v. Bentivenga</u>, 83 Ill. 2d 537, 542, 416 N.E.2d 259 (1981).  However, "[n]o person shall be deprived of life, liberty or property without due process of law."  Ill. Const. 1970, art. I § 2; <u>Morris</u>, 136 Ill. 2d at 161.

When reviewing a statute under the due process clause, the test focuses on the enactment's purpose and objective.  <u>Morris</u>, 136 Ill. 2d at 161-62; <u>People v. Bradley</u>, 79 Ill. 2d 410, 417, 403 N.E.2d 1029 (1980).  A statute will be upheld if it "bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective."  <u>People v. Wright</u>, 194 Ill. 2d 1, 24, 740 N.E.2d 755 (2000); <u>Morris</u>, 136 Ill. 2d at 161.  To satisfy the due process clause, the penalty prescribed for a particular crime need only be reasonably tailored to remedy the evil the legislature has determined to be a threat to the public health, safety, and general welfare.  <u>People v. Anderson</u>, 272 Ill. App. 3d 537, 540, 650 N.E.2d 648 (1995).  Courts determine the reasonableness of a statute.  <u>Morris</u>, 136 Ill. 2d at 161.

Defendant contends section 9-3(f) was enacted in order to "fight and deter" domestic violence.  He contends section 9-3(f) is not reasonably designed to implement the legislature's purpose because involuntary manslaughter is an unintentional act, and an unintentional act cannot be deterred by an enhanced penalty.  See <u>People v. Martin</u>, 119 Ill. 2d 453, 519 N.E.2d 884 (1988), <u>People v. Fernetti</u>, 104 Ill. 2d 19, 470 N.E.2d 501 (1984), <u>People v. Alejos</u>, 97 Ill. 2d 502, 455 N.E.2d 48 (1983), and <u>People v. Land</u>, 169 Ill. App. 3d 342, 523 N.E.2d 711 (1988).

In <u>Martin</u>, our supreme court observed that deterrence as an aggravating factor had, at best, marginal applicability to the offense of involuntary manslaughter.  <u>Martin</u>,

119 Ill. 2d at 459.  The court said "an enhanced penalty would have very little, if any, deterrent effect on potential offenders."  Martin, 119 Ill. 2d at 459.  However, the court did not address whether statutorily increasing the penalty for involuntary manslaughter under specific circumstances would violate due process.  Martin involved a sentencing judge's improper consideration of the victim's death as an aggravating factor.

In Fernetti, our supreme court said: "Involuntary manslaughter, by statute, is defined by its 'unintentional' nature.  It consists of the killing of a human being without the intention of doing so."  Fernetti, 104 Ill. 2d at 25.  The court held involuntary manslaughter could not serve as a predicate felony under the armed violence statute.  Fernetti, 104 Ill. 2d at 25.  Relying on Alejos, the court held the purpose of the armed violence statute was not only to "'punish the criminal and protect society from him but also to deter his conduct--that of carrying the weapon while committing a felony.'"  Fernetti, 104 Ill. 2d at 24, quoting Alejos, 97 Ill. 2d at 509.  In light of the statute's purpose, the court concluded it was "difficult to comprehend how the armed-violence provisions would be able to deter an unintentional act."  Fernetti, 104 Ill. 2d at 25.

In Land, the court concluded, based on the statutory language and policy underlining the felony murder statute, that the predicate felony upon which a felony murder conviction is based must involve an intentional or knowing state of mind.  Land, 169 Ill. App. 3d at 357.  In reaching its decision, the court relied on Fernetti and said:

> "The purpose underlying the increased penalty for a murder
>
> that results during the commission of a felony is deterrence.
>
> Where an individual acts recklessly, deterrence is not

possible.  Consequently, a predicate conviction for a
reckless act would not serve the deterrent purposes
underlying the felony murder statute."  Land, 169 Ill. App. 3d
at 356.

Fernetti, Alejos, and Land centered on statutory construction, not due process.
The decisions in Fernetti, Alejos, and Land hold that involuntary manslaughter cannot
be used as a predicate felony for a separate and greater offense, such as felony murder
or armed violence, because the legislature could not have intended to deter
unintentional conduct.  However, there is no suggestion in Fernetti, Alejos, or Land that
a defendant's due process rights would be violated by statutorily increasing the class
level of an involuntary manslaughter offense under certain specific circumstances.

The armed violence and felony murder statutes at question in Fernetti, Alejos,
and Land were ambiguous as to whether involuntary manslaughter and other non-
intentional offenses were meant to be included as predicate felonies.  Since no
legislative history existed to assist the court in determining legislature intent, ambiguities
in the armed violence statute had to be resolved in favor of the defendant.  See Alejos,
97 Ill. 2d at 510.  In light of the fact that carrying a weapon was not a criminal offense in
all instances and the improbability that the armed violence provision would deter
unintentional acts, the court concluded the rule of lenity was appropriate and declined to
apply the armed violence statute literally.  Alejos, 97 Ill. 2d at 510.

We have considered the legislative debates concerning section 9-3(f).  Contrary
to defendant's contention, the comments are vague at best, not helpful.  The plain

language of section 9-3(f), however, makes it clear the legislature intended the penalty

for involuntary manslaughter to be more severe under certain circumstances.  We see

no reason why the legislature could not have created an additional offense of

involuntary manslaughter against a family or household member, imposing a Class 2

penalty.  In effect that is exactly what the legislature did in this statute.  No reported

decision suggests the legislature violated due process rights when it did it.

Our conclusion is supported by our supreme court's recent decision in People v.

Davis, No. 99363, slip op. at 6 (December 15, 2005), although the issue was not the

one we deal with here.  In Davis, an involuntary manslaughter case, the court said:

> "As noted, before defendant chose to have the jury
>
> instructed on the lesser offense, the circuit court accurately
>
> informed defendant of the penalty he faced, given that
>
> Anthony was his son.  Armed with this knowledge, defendant
>
> freely elected to have the jury instructed.  Given these facts,
>
> we conclude that, even assuming it was error to omit the
>
> family or household member allegation from the indictment,
>
> defendant failed to suffer any prejudice in the preparation of
>
> his defense."  (Emphasis added.)  Davis, slip op. at 6.

In light of the legislature's wide discretion when establishing penalties for criminal

offenses, we find section 9-3(f) is reasonably tailored to accomplish the legislature's

goal.  See People v. Torres, 327 Ill. App. 3d 1106, 1113, 764 N.E.2d 1206 (2002) ("It is

well-established that the legislature, under its police power, has broad discretion to

define offenses and prescribe penalties and aggravating factors for the offenses");

People v. Sesmas, 227 Ill. App. 3d 1040, 1051, 591 N.E.2d 918 (1992) ("Absent a clear

violation of a constitutional limitation, *** we will not interfere with the legislature's

determination of the character and extent of the penalty for the crime.")

We find section 9-3(f) of the Code is constitutional.

II. Sentencing Credit

Defendant contends, and the State agrees, the mittimus should be corrected to

reflect a sentencing credit for 1,226 days, rather than 1,199 days, served in pre-trial

custody.  We amend the mittimus to reflect a 1,226-day sentencing credit.

III. Custodial Credit

In addition to the prison term, the trial court imposed a $5,000 fine.  Defendant

contends, and the State agrees, he was entitled to receive a $5-per-day credit towards

his fine for each day he spent in custody before sentencing.  725 ILCS 5/110-14 (West

2000).  The record reflects defendant spent 1,226 days in custody before the conviction.

His fine should have been satisfied by the custodial credit.  We amend his judgment to

reflect the credit.

IV. DNA

Defendant contends the compulsory extraction and perpetual

storage of his DNA violate his fourth amendment right to be free

from unreasonable searches and seizures under the federal and

state constitutions.  U.S. Const., amend. IV; Ill. Const. 1970,

art. I, § 6.  Section 5-4-3 of the Unified Code of Corrections

1-04-2680

mandates DNA sampling from any person convicted or found guilty "of any offense classified as a felony under Illinois law." 730 ILCS 5/5-4-3(a) (West 2000).

This court repeatedly has addressed this issue and rejected defendant's position. See People v. Redmond, 357 Ill. App. 3d 256, 264, 828 N.E.2d 1206 (2005); People v. Foster, 354 Ill. App. 3d 564, 571, 821 N.E.2d 733, 740 (2004); People v. Butler, 354 Ill. App. 3d 57, 68-69, 819 N.E.2d 1133 (2004); People v. Edwards, 353 Ill. App. 3d 475, 486, 818 N.E.2d 814 (2004); People v. Peppers, 352 Ill. App. 3d 1002, 1007-08, 817 N.E.2d 1152 (2004); People v. Ramos, 353 Ill. App. 3d 133, 154, 817 N.E.2d 1110 (2004); People v. Hall, 352 Ill. App. 3d 537, 549-50, 816 N.E.2d 703 (2004); People v. Garvin, 349 Ill. App. 3d 845, 856 (2004), appeal allowed, 212 Ill. 2d 541, 824 N.E.2d 287 (Nov. 24, 2004). Every state and federal court that has addressed the constitutionality of a similar DNA statute has upheld the statute. Peppers, 352 Ill. App. 3d at 1004-05, citing Green v. Burge, 354 F.3d 675, 679 (7th Cir. 2004), and Garvin, 349 Ill. App. 3d at 854.

We find, consistent with virtually unanimous authority, that section 5-4-3 is constitutional and defendant's constitutional rights were not violated by the order to extract his DNA.

CONCLUSION

1-04-2680

For the foregoing reasons, we affirm defendant's conviction, sentence, and entry of the DNA order.  We amend the Costs and Fees order to reflect a credit of $5,000 against defendant's $5,000 fine, and we amend the mittimus to reflect a 1,226-day sentencing credit.

Affirmed as modified.

GARCIA, P.J., concurs.

HALL, J., concurring in part and dissenting in part.

JUSTICE HALL concurring in part and dissenting in part:

I concur with the majority's decision except for its conclusion that section 5-4-3 of the Code (730 ILCS 5/5-4-3 (West 2002), as amended by Public Act 92-829, effective August 22, 2002, is constitutional.  I continue to believe that the compulsory collection and storage of DNA evidence from convicted felons is unconstitutional because it violates the offender's fourth amendment right to be free from unreasonable searches and seizures. See People v. Peppers, 352 Ill. App. 3d 1002, 1013-14, 817 N.E.2d 1152 (2004) (Hall, J., dissenting); People v. Zhani, No. 1-03-2326 (2004) (unpublished order under Supreme Court Rule 23) (Hall, J., concurring in part and dissenting in part).

I believe that requiring DNA samples from convicted felons cannot be justified under either the special needs exception or

1-04-2680

the balancing test. In regard to the special needs exception, the mandatory collection of DNA evidence from convicted felons cannot be considered a special need since it does not serve any need above and beyond law enforcement purposes.

Under the balancing test, the court is charged with balancing the privacy interests of the prisoner in remaining free of bodily invasion against the State's interest in carrying out the search. However, in light of the State's predominate law enforcement interests compared to the subject prisoner's greatly reduced privacy rights, one would be hard-pressed to find a case in which the balance would not be struck in favor of the government. The balancing test favors the government to such an extent that it cannot fairly determine if the compulsory collection of DNA evidence from a prisoner, based solely on the prisoner's status as a convicted felon, is a permissible exception to the fourth amendment's requirements of probable cause and individualized suspicion. A balancing test that always favors one side is not actually a test at all. Accordingly, I respectfully concur in part and dissent in part.