**FIRST DIVISION**
**JUNE 29, 2007**

No. 1-04-2437

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 12422 |
| | ) | |
| WILLIAM ROBINSON, | ) | The Honorable |
| | ) | Preston L. Bowie, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

On May 17, 2001, the State charged the defendant, William Robinson, with first degree murder (720 ILCS 5/9-1(a)(1) (West 2000)) and unlawful use of a weapon (720 ILCS 5/24-1(a)(7)(ii) (West 2000)). The trial court found the defendant guilty of involuntary manslaughter and unlawful use of a weapon. At sentencing, the court found that because the defendant and victim were in a dating relationship, the victim was a "household member" as defined by section 112A-3(3) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/112A-3(3) (West 2000)). The "household member" finding elevated the offense from a Class 3 to

No. 1-04-2437

a Class 2.  The court sentenced the defendant to a 12-year prison term for involuntary manslaughter and a concurrent 5-year term for unlawful use of a weapon.  The court later denied the defendant's motions to reconsider his sentence and for a new trial, and his motion in arrest of judgment.  The defendant appeals, arguing: (1) his due process rights were violated when he was convicted of the uncharged offense of involuntary manslaughter of a household member; (2) the State failed to comply with section 111-3(c-5) of the Code because it did not give the defendant notice that it would seek an enhanced sentence for involuntary manslaughter; (3) section 9-3(f) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/9-3(f) (West 2000)), which provides for the sentence enhancement, is unconstitutional; and (4) the compulsory extraction of his blood and storage of his DNA violated his right to be free from unreasonable searches and seizures.  We affirm.

BACKGROUND

In May 2001, the defendant was charged by indictment with six counts of first degree murder for the murder of Joi Jefferson and one count of felony unlawful use of a weapon.  None of the first degree murder counts alleged that Jefferson was the defendant's girlfriend or that she was a member of the defendant's household.  Before trial, the State nol-prossed five

2

of the first degree murder counts and proceeded on one count of first degree murder and felony unlawful use of a weapon. The defendant's trial began as a jury trial, but prior to closing arguments, the defendant waived his right to a jury trial and the case was decided by the trial court.

The evidence at trial showed that on April 13, 2001, the victim, Joi Jefferson, called the defendant and asked him to accompany her home from work because she cashed a check and did not want to ride the bus home alone. The defendant testified that Jefferson was his girlfriend and that they had dated off and on for three years. After he picked her up from work, they went to his apartment, where they engaged in sexual intercourse. They were interrupted by two phone calls, the first from the defendant's mother. The second from Angel Jordan, a woman the defendant was also dating.

While the defendant spoke with Jordan, Jefferson became upset. After the defendant brushed Jefferson off and told her to go home, she took a sawed-off shotgun from the defendant's counter and pointed it at him. The defendant testified that the gun was loaded and sitting on the counter. He indicated that he placed it on the counter two days earlier after he was threatened by his sister's boyfriend.

Jefferson took the gun into the bathroom and closed the

3

door.  When the defendant finished his conversation with Jordan, he went to the bathroom to see what Jefferson was doing.  The defendant knocked on the bathroom door and Jefferson told him to leave her alone.  The defendant continued to antagonize Jefferson because he knew it would bother her.

After a few minutes, the defendant forced the bathroom door open.  Jefferson was sitting on the toilet with the gun across her lap and pointed away from the defendant.  The defendant asked Jefferson what was wrong with her and told her to give him the gun.  He tried to grab the gun, but she moved it out of his reach.  He reached for the gun again.  This time he grabbed it, stepped back, and fired the gun.

The defendant shot Jefferson in the face.  After she was shot, she fell between the toilet and the bathtub.  The defendant tried to move her back onto the toilet and admitted positioning her arm so that it was in contact with the gun.  The defendant testified that he was in shock.  He called his mother and told her that a friend had been shot; he then called 911.  When the paramedics arrived, Jefferson was pronounced dead.  At the scene, the defendant told police officers that Jefferson shot herself.

The defendant was taken to Area 2 police station for questioning.  After being confronted with evidence that Jefferson could not have shot herself, the defendant told Assistant State's

4

Attorney Megan Goldish that when he went into the bathroom, he and Jefferson struggled over the gun and the gun went off. This conversation was not memorialized. In a videotaped interview played for the jury, the defendant indicated that Jefferson was his girlfriend and that they had been dating on and off for three years. He stated that after Jefferson took the gun, he got angry and antagonized her by banging on the bathroom door. He then forced the door open and took the gun from her lap. He called her a bitch, pointed the gun, and pulled the trigger. The defendant testified that he shot the gun, but he did not remember squeezing the trigger and he did not intend to do so.

After the parties rested, the defendant executed a jury waiver and the trial court decided the case. During closing argument, both the State and the defendant's attorney referred to Jefferson as the defendant's girlfriend. The defendant also asked the court to find him guilty of involuntary manslaughter rather than first degree murder. The court found the defendant guilty of involuntary manslaughter.

At sentencing, the State asked the trial court to make a finding that the defendant and Jefferson were in a dating relationship and that she was a "household member" for purposes of a sentence enhancement under section 9-3(f) of the Criminal Code. The State then urged the court to sentence the defendant

5

to the maximum prison term of 14 years.  The defendant argued that Jefferson was not a household member based on her and the defendant's on-and-off-again relationship.

The trial court found that Jefferson was a "household member" and that the defendant was eligible to be sentenced under the section 9-3(f) enhancement.  The court sentenced the defendant to a term of 12 years for involuntary manslaughter and a concurrent term of 5 years for felony unlawful use of a weapon.

The defendant filed a motion to reconsider his sentence, arguing that his sentence violated his due process and equal protection rights because the victim's status was not included in the indictment and involuntary manslaughter of a household member was not a lesser-included offense of first degree murder.  The court denied the motion, finding that the State was not obligated to include the nature of the relationship between the defendant and Jefferson in the charge of first degree murder, and that the evidence was overwhelming that Jefferson was a "household member."  The defendant filed a motion for new trial and a motion in arrest of judgment, which alleged the charging instrument was insufficient because it failed to allege the fact that Jefferson was a household member. The court denied the motions.  This appeal followed.

ANALYSIS

No. 1-04-2437

As his principal argument, the defendant maintains that he was wrongly convicted of the uncharged offense of involuntary manslaughter of a household member. He maintains that this offense is a separate and distinct offense from "simple" involuntary manslaughter. And, because it requires proof of an "element" that the offense of first degree murder does not -- that the victim was a household member -- it is not a lesser-included offense of first degree murder. Thus, the issue at the heart of this appeal is whether the victim's status as a household member is an "element," as that term is used in included-offense analysis, of the offense of involuntary manslaughter of which the defendant was convicted and sentenced, or whether it is merely a factor that enhances a defendant's sentence that must be proved beyond a reasonable doubt.

I. Lesser-Included Offense

An included offense "means an offense which *** [i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged[.]" 720 ILCS 5/2-9(a) (West 2000). There is no doubt that "simple" involuntary manslaughter is a lesser-included offense of first degree murder based on a less culpable mental state (People v. Givens, 364 Ill. App. 3d 37, 44, 846 N.E.2d 951 (2005)), and the

7

defendant does not claim otherwise. The defendant maintains, however, that because the involuntary manslaughter charge upon which he was sentenced contains the added "element" of the status of the victim as a household member, it is a distinct offense from "simple" involuntary manslaughter. In other words, because involuntary manslaughter involving a household member requires proof of more facts than that which is required to establish the commission of first degree murder, the offense with which the defendant was charged, it is not an included offense.

Generally, involuntary manslaughter is a Class 3 felony. However, when the victim is a household member, the offense is classified a Class 2 felony. Section 9-3(f) of the Criminal Code provides:

"In cases involving involuntary manslaughter in which the victim was a family or household member as defined in paragraph (3) of Section 112A-3 of the Code of Criminal Procedure of 1963 [725 ILCS 5/112A-3(3) (West 2000)], the penalty shall be a Class 2 felony, for which a person if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 3 years and not more than 14 years." 720 ILCS 5/9-3(f) (West

8

2000).

A family or household member includes: "persons who have or have had a dating or engagement relationship." 725 ILCS 5/112A-3(3) (West 2000). Illinois courts have interpreted a dating relationship as a serious courtship in that it is "'a relationship that [is] more serious and intimate than casual.'" People v. Young, 362 Ill. App. 3d 843, 851, 840 N.E.2d 825 (2005), quoting Alison C. v. Westcott, 343 Ill. App. 3d 648, 653, 798 N.E.2d 813 (2003). "[A]t a minimum, [it must be] an established relationship with a significant romantic focus." Young, 362 Ill. App. 3d at 851.

We acknowledge and agree with the defendant that section 9-3(f) requires proof of a factor that first degree murder does not -- that the victim is a household member. This factor does not, however, create a distinct offense of involuntary manslaughter of a household member. Instead, it is a factor that enhances the range of penalties for the offense of involuntary manslaughter.

The supreme court recently explained that even if an offense has different classifications based on the status of a victim, the offense is and remains a "single offense." People v. Green, No. 102751, slip op. at 6 (May 24, 2007). In Green, the defendant was charged in a one-count indictment with robbery of "a person 60 years of age or over, *** in violation of 720 ILCS

9

No. 1-04-2437

5/18-1(a)(Class 1 Felony)." Green, No. 102751, slip op. at 1. The issue addressed by the supreme court was whether there was a conflict between the elements instruction that contained the proposition that the victim was 60 years of age or over and the verdict form that simply found the defendant guilty of robbery, with no mention of the age of the victim. Based on this perceived "conflict" between the elements instruction and the verdict form, the appellate court reduced the defendant's conviction from Class 1 to Class 2 robbery, citing as authority Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Green, No. 102751, slip op. at 5. The supreme court rejected the appellate court's analysis, finding no conflict existed between the elements instruction and the signed verdict form. Green, No. 102751, slip op. at 7. The Court rejected the appellate court's pronouncement that "'robbery' and 'robbery of a person 60 years of age or over'" are distinct crimes. Green, No. 102751, slip op. at 6.

> "'[R]obbery' and 'robbery of a person 60
> years of age or over' are not distinct
> crimes, a fact that even a cursory
> examination of the robbery statute reveals.
> Rather, Illinois has a single offense called
> 'robbery' that is either a Class 1 or a Class

10

No. 1-04-2437

　　　　　2 felony, depending upon the nature of the victim:

　　　　　　　　　'(a) A person commits <u>robbery</u> when he or she takes property *** from the person or presence of another by the use of force or by threatening the imminent use of force.

　　　　　　　　　(b) Sentence.

　　　　　　　　　<u>Robbery</u> is a Class 2 felony. However, if the victim is 60 years of age or over *** <u>robbery</u> is a Class 1 felony.'  (Emphasis added.) 720 ILCS 5/18-1 (West 2004).

　　　　　Thus, under the statute's plain language, even when charged as a Class 1 felony because of the victim's age, the name of the offense committed remains 'robbery.'" <u>Green</u>, No. 102751, slip op. at 6.

　　The rationale expressed by Chief Justice Thomas in <u>Green</u> for the unanimous court applies equally here.  Like the robbery statute, the involuntary manslaughter statute establishes a single offense of involuntary manslaughter, which is either a

11

No. 1-04-2437

Class 3 or a Class 2 felony, depending on the status of the victim. 720 ILCS 5/9-3 (West 2000). The status of the victim as a household or family member acts only as a factor to enhance the defendant's sentence; the offense committed remains involuntary manslaughter.

The statutory elements of involuntary manslaughter are set out in section 9-3(a). Upon proof beyond a reasonable doubt of each of the statutory elements, the offense of involuntary manslaughter is established. Only upon establishing the commission of the offense do we look to the sentencing classification. Under section 9-3(d) involuntary manslaughter is a Class 3 felony unless there is proof beyond a reasonable doubt that the victim was a household member, then under section 9-3(f) it is a Class 2 felony. Whether a Class 2 or Class 3 felony, the offense committed remains involuntary manslaughter. See Green, No. 102751, slip op. at 6; 720 ILCS 5/2-12 (West 2000) (defining "offense" as a violation of any Illinois penal statute). It is the offense of involuntary manslaughter set out in section 9-3 that is a lesser-included offense of first degree murder. See Givens, 364 Ill. App. 3d at 44. To hold otherwise would render the term "offense" as used in section 2-9(a) of the Criminal Code at odds with the supreme court's holding in Green.

Thus, we hold the status of the victim is not an "element"

12

No. 1-04-2437

of the offense of involuntary manslaughter for purposes of included-offense analysis.[1]  That the statutory elements of involuntary manslaughter are set out in section 9-3(a) is further supported by section 111-3(c-5) of the Code.  This section recognizes that there are sentence-enhancing factors that must be proved beyond a reasonable doubt but are not elements of the charged offense:

>     "[I]f an alleged fact (other than the fact of
>     a prior conviction) is <u>not</u> <u>an</u> <u>element</u> <u>of</u> <u>an</u>
>     <u>offense</u> but is sought to be used to increase
>     the range of penalties for the offense beyond
>     the statutory maximum that could otherwise be
>     imposed for the offense, the alleged fact
>     must be included in the charging instrument
>     or otherwise provided to the defendant
>     through a written notification before trial,
>     submitted to a trier of fact as an

---

[1] The term "elements" has a slightly broader meaning in the "elements instruction" to a jury; it describes the "propositions" that the State must prove beyond a reasonable doubt, which may include a sentence enhancing factor.  See <u>Green</u>, No. 102751, slip op. at 6-7, citing Illinois Pattern Jury Instructions, Criminal, (2000), No. 14.04.

13

aggravating factor, and proved beyond a

reasonable doubt."  (Emphasis added.) 725

ILCS 5/111-3(c-5) (West 2000).

We, therefore, reject the defendant's assertion that involuntary manslaughter of a household member is a distinct offense from "simple" involuntary manslaughter.  In doing so, we choose not to follow the holding in People v. DeBord, 344 Ill. App. 3d 321, 328, 800 N.E.2d 809 (2003), where the court found involuntary manslaughter of a family member was not a lesser-included offense of first degree murder.  We note our supreme court cast doubt on this holding in Davis: "To the extent that DeBord is inconsistent with this opinion, it is overruled." People v. Davis, 217 Ill. 2d 472, 480, 841 N.E.2d 884 (2005). Our supreme court's holding in Green that proof of a sentence enhancing factor to elevate the classification does not create a distinct offense, leads to but one conclusion: there is but one offense of involuntary manslaughter and that offense is a lesser-included offense of first degree murder.

## II. Notice

In the first of three alternative arguments, the defendant maintains that his sentence is void because the State failed to provide him with sufficient notice that it was seeking an enhanced sentence for involuntary manslaughter in violation of

14

No. 1-04-2437

section 111-3(c-5) of the Code.  Section 111-3(c-5) provides:

> "Notwithstanding any other provision of
> law, *** if an alleged fact (other than the
> fact of a prior conviction) is not an element
> of an offense but is sought to be used to
> increase the range of penalties for the
> offense beyond the statutory maximum that
> could otherwise be imposed for the offense,
> the alleged fact must be included in the
> charging instrument or otherwise provided to
> the defendant through a written notification
> before trial, submitted to a trier of fact as
> an aggravating factor, and proved beyond a
> reasonable doubt.  Failure to prove the fact
> beyond a reasonable doubt is not a bar to a
> conviction for commission of the offense, but
> is a bar to increasing, based on that fact,
> the range of penalties for the offense beyond
> the statutory maximum that could otherwise be
> imposed for that offense."  (Emphasis added.)
> 725 ILCS 5/111-3(c-5) (West 2000).

The defendant cites People v. Champ, 329 Ill. App. 3d 127, 768 N.E.2d 237 (2002), to support his argument that when a

15

sentence is not imposed pursuant to statutory requirements, the sentence is void. In Champ, the defendant, a minor, was charged with first degree murder. A jury found him guilty of involuntary manslaughter and a trial court sentenced him as an adult to five years in prison. On appeal, the defendant argued that he should have been sentenced as a juvenile, not an adult, because the State failed to request a hearing pursuant to section 5-4(6)(c)(ii) of the Juvenile Court Act. Champ, 329 Ill. App. 3d at 128-29. Section 5-4(6)(c)(ii) mandated that before a juvenile could be sentenced as an adult for any crime not specifically listed in section 5-4(6)(a), the State was required to request a hearing within 10 days of "'the entry of a finding or the return of a verdict.'" Champ, 329 Ill. App. 3d at 130, quoting 705 ILCS 405/5-4(6)(c)(ii) (West 1996) (now, as amended, 705 ILCS 405/5-130(1)(c)(ii) (West 2000)). First degree murder was an offense listed in section 5-4(6)(a); involuntary manslaughter was not. Champ, 329 Ill. App. 3d at 130.

The Champ court vacated the defendant's sentence. It held that because the language of section 5-4(6)(c)(ii) was unambiguous and the defendant was convicted of an offense that was not covered by section 5-4(6)(a), the State was required to request a hearing to determine whether the defendant should be sentenced as an adult. Champ, 329 Ill. App. 3d at 133. Because

16

No. 1-04-2437

the State failed to request such a hearing, the defendant's adult sentence was void. Champ, 329 Ill. App. 3d at 135-36. While not cited by Champ, the court could just as well have quoted our supreme court: "A sentence which does not conform to a statutory requirement is void." People v. Arna, 168 Ill. 2d 107, 113, 658 N.E.2d 445 (1995).

Section 111-3(c-5) is not analogous to the section at issue in Champ. There is no statutory requirement here that was unmet by the State. By its plain language, section 111-3(c-5) applies to the offense charged, not to any lesser-included offense. The section requires notice "before trial," and indicates that the alleged fact is one that increases the penalty of an offense set out in the charging instrument, but not a statutory element of the offense. 725 ILCS 5/111-3(c-5) (West 2000). We also note, it was the defendant that asked the trier of fact, the trial judge, to find him guilty of the lesser-included offense of involuntary manslaughter.[2] Involuntary manslaughter, elevated to a Class 2 offense based on the status of the victim as a

_____

[2] See People v. Schickel, 347 Ill. App. 3d 889, 897, 807 N.E.2d 1195 (2004), quoting People v. Carter, 208 Ill. 2d 309, 319, 802 N.E.2d 1185 (2003) ("'Action taken at defendant's request precludes defendant from raising such course of conduct as error on appeal'").

17

No. 1-04-2437

household member, was set out in our Criminal Code "and therefore defendant was on notice that his conduct might fall within its scope." People v. Harvey, 366 Ill. App. 3d 119, 133, 851 N.E.2d 182 (2006).

We reject any claim by the defendant that, when confronted by the defendant's request that he be found guilty of a lesser-included offense that provides for a sentence enhancing factor, the State must give the defendant notice of the elevated range of sentences at the risk of injecting error if it fails to do so. Under the circumstances present in this case, the State did not violate section 111-3(c-5). The Class 2 sentence imposed was not void based on lack of notice.

### III. Due Process

In his next alternative claim, the defendant frames his argument as a deficient-charging-instrument claim, alleging that his due process rights were violated when he was convicted of an offense that was not a lesser-included offense of first degree murder. Because we have found that involuntary manslaughter involving a household member is a lesser-included offense of first degree murder, much of his charging-instrument argument has no application.

In fact, based on the dilemmas posed by each party, we question whether a case involving a sentence enhancement presents

18

No. 1-04-2437

a deficient-instrument type of claim at all. But compare Davis, 217 Ill. 2d at 478 (the defendant's argument that he was improperly convicted of involuntary manslaughter of a family member based on an indictment charging first degree murder was analyzed as a deficient-instrument type of claim, requiring a showing of prejudice when first raised on appeal). The State, in response to this argument, points out that the defendant's deficient-charging-instrument argument requires the State to become "clairvoyant" or add the superfluous fact of the victim's status to every murder indictment where the victim is a household member to provide notice prior to trial in the event the accused should be convicted of involuntary manslaughter so as to face a Class 2 sentencing range rather than a Class 3. In reply to the State's claim that this issue was not preserved because the defendant did not object prior to trial, the defendant points out he could not have been expected to object to the charging instrument based on a "speculative prediction" that he might later be convicted of an uncharged offense. The predicaments envisioned by each party suggest that the anticipatory actions set out by each side are not required under established law.

In general, a defendant's due process rights are violated where he is convicted of an offense that was never charged. People v. Baldwin, 199 Ill. 2d 1, 6, 764 N.E.2d 1126 (2002).

19

No. 1-04-2437

Illinois courts, however, have held that there is no violation if: (1) the uncharged offense is identified by the charging instrument as a lesser offense of the one charged; and (2) the evidence adduced at trial rationally supports the conviction on the lesser-included offense. Baldwin, 199 Ill. 2d at 6.

As made clear, involuntary manslaughter is a lesser-included offense of first degree murder. Givens, 364 Ill. App. 3d at 44. Proof beyond a reasonable doubt that the victim is a household member elevates the involuntary manslaughter charge from Class 3 to Class 2. 720 ILCS 5/9-3 (West 2000). The status of the victim, however, is not a statutory element of the offense of involuntary manslaughter. In the instant case, that offense is clearly identified in the charging instrument and there was sufficient evidence to support the charge. Because involuntary manslaughter involving a household member is a lesser-included offense of first degree murder, the State was not required to include the non-element fact of the victim's status as a household member in the first degree murder charging instrument in order to provide notice to the defendant that if convicted of involuntary manslaughter he might face a Class 2 sentencing range; nor do we believe was the defendant required to object to the charging instrument prior to trial in anticipation of being found guilty of involuntary manslaughter of a household member in

20

order to preserve a claim that the charging instrument did not charge the lesser offense. See People v. Kolton, 219 Ill. 2d 353, 367, 848 N.E.2d 950 (2006) (if elements of a lesser offense are explicit or can be reasonably inferred from the factual description of the charged offense, it is "included" in the charged offense). In any event, because involuntary manslaughter of a household member is a lesser-included offense of first degree murder, the defendant's due process rights were not violated upon being convicted of that included offense.

Assuming merit in the defendant's claim of a due process violation based on a deficient charging instrument, we would find no prejudice. See People v. Benitez, 169 Ill. 2d 245, 257-58, 661 N.E.2d 344 (1996) (explaining that where an indictment is challenged for the first time in a posttrial motion in arrest of judgment or on appeal, it is subject to the prejudice standard of review). The indictment apprised him of the precise offense charged with sufficient specificity to prepare his defense and to bar future prosecution arising out of the same conduct. See Davis, 217 Ill. 2d at 479. The first degree murder charge named Jefferson as the victim and the defendant was certainly aware of his relationship with her.

The defendant, in his videotaped statement, when he talked to police, and in his trial testimony, identified Jefferson as

21

No. 1-04-2437

his "girlfriend." He does not point to any evidence that would put in controversy the nature of their relationship. See Davis, 217 Ill. 2d at 479-80. Although the defendant's trial attorney argued that she would not have requested consideration of an involuntary manslaughter conviction had she known the defendant would be sentenced for a Class 2 rather than a Class 3 felony, she failed to specifically state what she would have done during the course of the trial to refute the testimony regarding the relationship between the defendant and the victim. If the defendant were convicted of first degree murder, he faced a minimum sentence of 20 years. His implicit argument post trial that he wanted only to face a maximum of 5 years for a Class 3 felony rather than 14 years for a Class 2 felony, else he would have chosen to proceed on the first degree murder charges, is unpersuasive at best.[3]

In any event, something more than trial counsel's bald assertion that the defendant would not have sought consideration

---

[3] See Schickel, 347 Ill. App. 3d at 902 (Quinn, P.J., concurring) ("Had the trial court not done as the defendant requested, the only alternatives for the trial court would have been to find defendant either guilty or not guilty of [first degree] murder. While the State was willing to take this risk, the defendant was not").

22

of a lesser-included offense had he known the full range of sentences that he faced is required to establish prejudice on his due process claim. This is so because both trial counsel and the defendant were on notice as to the range of sentences by the very provision of the Criminal Code the defendant requested be applied to him. See 720 ILCS 5/9-3 (West 2000) (under section 9-3(d) involuntary manslaughter is a Class 3 felony; under section 9-3(f) it is a Class 2 felony); People v. Molnar, 222 Ill. 2d 495, 514, 857 N.E.2d 209 (2006) (no due process violation where Registration Act itself provides notice that failure to comply will result in a 10-year extension of registration period). Although the defendant now objects to being sentenced by the trial court under the enhancement, it was within the court's power to do so. No prejudice ensued to the defendant based on the trial court's finding that Jefferson was a household member mandating a Class 2 sentence.

### IV. Constitutionality

In his final alternative argument, the defendant challenges the constitutionality of section 9-3(f) of the Criminal Code, arguing that the purpose for the enhancement, to fight and deter domestic violence, is not rationally related to the enhanced penalty.

Statutes are presumed to be constitutional, and the party

challenging a statute has the burden of demonstrating its invalidity. People v. Malchow, 193 Ill. 2d 413, 418, 739 N.E.2d 433 (2000). We will "construe a statute in a manner that upholds its validity and constitutionality if it can be reasonably done. We review de novo whether a statute is constitutional." Malchow, 193 Ill. 2d at 418.

The First District recently found that section 9-3(f) is constitutional. People v. Adams, 363 Ill. App. 3d 34, 39, 842 N.E.2d 1187 (2006). In Adams, the defendant argued that section 9-3(f) was unconstitutional and violated his right to due process because the statute bore no rational relationship to the legislature's stated purpose of fighting and deterring domestic violence. Adams, 363 Ill. App. 3d at 36.

The Adams court considered the numerous cases that found that involuntary manslaughter cannot be deterred by an enhanced penalty, which are also cited by the defendant in this appeal. Adams, 363 Ill. App. 3d at 37, citing People v. Martin, 119 Ill. 2d 453, 519 N.E.2d 884 (1988); People v. Fernetti, 104 Ill. 2d 19, 470 N.E.2d 501 (1984); People v. Alejos, 97 Ill. 2d 502, 455 N.E.2d 48 (1983); People v. Land, 169 Ill. App. 3d 342, 523 N.E.2d 711 (1988). The court distinguished those cases as focusing on statutory construction, not due process, and held that none of them suggested that a defendant's due process rights

would be violated by statutorily increasing the class level of an involuntary manslaughter offense under certain specific circumstances. <u>Adams</u>, 363 Ill. App. 3d at 38.

The court looked to the legislative history of section 9-3(f), but found it "vague at best, not helpful." <u>Adams</u>, 363 Ill. App. 3d at 38. It instead focused on the plain language of the statute: "The plain language of section 9-3(f), however, makes it clear the legislature intended the penalty for involuntary manslaughter to be more severe under certain circumstances." <u>Adams</u>, 363 Ill. App. 3d at 38. Because the legislature has wide discretion when establishing penalties for criminal offenses, the court found that section 9-3(f) was reasonably tailored to accomplish the legislature's goals. <u>Adams</u>, 363 Ill. App. 3d at 39. The defendant presents no argument that requires us to revisit this issue.

## V. DNA Extraction

The defendant's final argument is that the compulsory extraction of his blood and the perpetual storage of his DNA profile violated his fourth amendments right to be free from unreasonable search and seizure.

This argument was rejected by the supreme court in <u>People v. Garvin</u>, 219 Ill. 2d 104, 125, 847 N.E.2d 82 (2006).

25

CONCLUSION

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

McBRIDE, P.J., and R. GORDON, J., concur.