Docket No. 105206.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIAM ROBINSON, Appellant.

*Opinion filed November 20, 2008.*

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Defendant, William Robinson, was charged with six counts of first degree murder, but was ultimately convicted of involuntary manslaughter and felony unlawful use of a weapon in the circuit court of Cook County. Involuntary manslaughter is generally a Class 3 felony with a sentencing range of two to five years. 720 ILCS 5/9–3(d) (West 2000). However, where the victim is a "family or household member," the penalty is increased to a Class 2 felony, with a sentencing range of 3 to 14 years. See 720 ILCS 5/9–3(f) (West 2000). At sentencing, the trial court found that the victim in this case was a "family or household member" (see 725 ILCS 5/112A–3(3) (West 2000)) and defendant was sentenced to 12 years' imprisonment

for involuntary manslaughter with a concurrent sentence of five years for felony unlawful use of a weapon. His conviction and sentence were affirmed on appeal. 374 Ill App. 3d 949. We granted defendant's petition for leave to appeal. 210 Ill. 2d R. 315(a). We now consider whether defendant was properly sentenced to a Class 2 felony for involuntary manslaughter where the "family or household member" classification was not included in the indictment. For the reasons that follow, we affirm the judgment of the appellate court.

BACKGROUND

Defendant was charged by indictment with six counts of first degree murder and one count of felony unlawful use of a weapon as a result of the April 13, 2001, shooting death of Joi Jefferson. The State proceeded on one count of first degree murder and a jury trial was commenced. At trial, the uncontested evidence demonstrated that on April 13, 2001, defendant received a call from Joi, his on-again, off-again "girlfriend" of three years. Joi asked defendant if he would escort her from her job at a fast-food restaurant because she had just cashed her paycheck and was afraid to take the bus by herself. Defendant met Joi and they took the bus back to defendant's apartment.

Defendant and Joi engaged in sexual intercourse upon arriving at defendant's apartment. They were interrupted by two telephone calls. The second caller was Angel Jordan, another woman with whom defendant was involved. Joi was upset that defendant was talking to Angel, and was angry because defendant was ignoring her and telling her to go home.

Defendant had a loaded, 16-gauge sawed-off shotgun lying on his kitchen counter. Joi took the shotgun off the counter, pointed it at defendant, and went into the bathroom. After finishing his telephone call, defendant began knocking on the bathroom door to antagonize Joi. At some point, he decided to go into the bathroom to obtain his gun.

Contradictory evidence was presented regarding what occurred inside the bathroom. Assistant State's Attorney Megan Goldish testified that defendant gave two oral statements and one videotaped statement about the shooting. In his first oral statement, defendant

said that Joi took the loaded shotgun into the bathroom, a struggle ensued, and Joi was shot. When defendant was told that this version of events was contradicted by the physical evidence, he gave another oral statement. In his second oral statement, defendant said that he kicked the bathroom door open, grabbed the gun away from Joi, called her a "bitch," pointed the gun, and stepped back and pulled the trigger. This statement was not memorialized. In a third statement, which was videotaped, defendant indicated that he "bust[ed]" into the bathroom to get his gun, and, after a small struggle, pulled the gun away from Joi. He then pointed the gun in Joi's direction for one to two seconds, and squeezed the trigger. Defendant described the actual act of shooting Joi in several ways. Initially, he said that "reflex" made him squeeze the trigger. He also said, "the gun went off." He later declared, "I shot her." Finally, defendant said: "I didn't use any caution. I took the gun from her and I just shot her." Defendant's videotaped statement was played for the jury and admitted into evidence.

At trial, defendant testified that he entered the bathroom, told Joi to give him the gun, and ultimately snatched it away from her. As he took a step backward, he saw a big flash and heard a loud boom. Defendant explained that the gun went off almost instantaneously after he grabbed it away from Joi. Defendant testified that he "never intended for anything like that to happen."

It was uncontested that defendant called 911 after the shooting and reported a suicide. Police were dispatched to defendant's apartment. When they arrived, defendant was standing naked in the doorway. He had blood on his hands and feet. Defendant was asked what happened, and he said his "girlfriend" shot herself. Police found Joi lying dead, in a pool of blood, on the floor of defendant's bathroom, between the toilet and the bathtub. A 16-gauge sawed-off shotgun was found near her body.

After the jury heard all the evidence, but prior to closing arguments, defendant executed a jury waiver and the matter proceeded as a bench trial. During closing argument, defendant asked the court to find him guilty of involuntary manslaughter. The trial court found that the evidence was insufficient to sustain a conviction for murder, and thus convicted defendant of involuntary manslaughter and felony unlawful use of a weapon.

-3-

At sentencing, the State argued that, as defendant's girlfriend, Joi was a "family or household member" at the time of the shooting. The State urged the court to make a finding that the defendant's sentence could be enhanced due to the victim's status and sentence defendant to the maximum Class 2 felony term of 14 years' imprisonment. The defense objected to sentencing defendant as a Class 2 offender, but ultimately conceded that the evidence demonstrated that the victim was a "family or household member" as defined by statute. The trial court sentenced defendant to 12 years in prison.

Defendant filed a motion to reconsider the sentence, alleging that his rights to equal protection and due process were violated because he did not receive written notification before trial advising him that the State sought to increase the range of penalties for the offense beyond the statutory maximum and did not prove the aggravating factor beyond a reasonable doubt. Defendant further argued that involuntary manslaughter, upgraded to a Class 2 felony as a result of the victim's status as a family or household member, is not a lesser-included offense of first degree murder. The trial court rejected defendant's arguments. Defendant then filed a motion for a new trial and a motion in arrest of judgment, arguing that the charging instrument was insufficient because it failed to allege that the victim was a family or household member. Defendant's motions were denied. Defendant appealed, raising the same arguments raised in the trial court. His conviction and sentence were affirmed. 374 Ill. App. 3d 949. We now consider defendant's claims of error.

ANALYSIS

Defendant asserts that his right to due process was violated when he was convicted and sentenced for the offense of "involuntary manslaughter of a family or household member" because that offense was not alleged in the charging instrument and is not a lesser-included offense of murder, the crime with which defendant was actually charged. Defendant's argument hinges on the premise that "involuntary manslaughter of a family or household member" is a unique offense, separate and apart from the offense of involuntary manslaughter. In fact, at oral argument, defendant conceded that his due process argument could only succeed if this court concludes that "involuntary manslaughter of a family or household member" is a

-4-

distinct crime, separate from involuntary manslaughter. Defendant admits that involuntary manslaughter is a lesser-included offense of murder, and that a conviction for involuntary manslaughter would have been proper in this case.

The State argues that defendant's conviction and subsequent sentencing enhancement based on the victim's status as a family or household member was entirely proper. The State's position is that involuntary manslaughter is a lesser-included offense of murder and there is only one offense of involuntary manslaughter, which is either a Class 3 or Class 2 felony, depending on the victim's status.

At the outset, we acknowledge that a criminal defendant has a fundamental right to due process of law, which includes notice of the charges brought against him. *People v. Kolton*, 219 Ill. 2d 353, 359 (2006). A defendant may not be convicted of an uncharged offense. *People v. Baldwin*, 199 Ill. 2d 1, 6 (2002). However, a defendant may be convicted of an offense that was not included in the charging instrument if that offense is a lesser-included offense of the crime actually charged, and the evidence presented at trial rationally supports that outcome. *Kolton*, 219 Ill. 2d at 360. A lesser-included offense is an offense established by proof of lesser facts or a lesser mental state, or both, than the charged offense. 720 ILCS 5/2–9(a) (West 2000); *People v. Davis*, 213 Ill. 2d 459, 477 (2004). The difference between involuntary manslaughter and first degree murder lies in the mental state that accompanies the conduct resulting in the victim's death. *People v. DiVincenzo*, 183 Ill. 2d 239, 249 (1998). Involuntary manslaughter requires a less culpable mental state than first degree murder and is therefore a lesser-included offense of first degree murder. *DiVincenzo*, 183 Ill. 2d at 249.

Before we address defendant's argument, we reiterate that defendant does not dispute that a conviction for involuntary manslaughter would be proper in this case; in fact, defendant argued for such a conviction in the trial court. Further, defendant does not dispute that the victim in this case was a "family or household member" as defined by statute and interpreted by case law. See 725 ILCS 5/112A–3(3) (West 2000); *People v. Wilson*, 214 Ill. 2d 394, 399-400 (2005).

The gravamen of this case centers on whether defendant was convicted of "involuntary manslaughter of a family or household

member," or whether defendant was convicted of "involuntary manslaughter" and received an enhanced sentence. If we conclude that there is only one crime of involuntary manslaughter, our analysis of defendant's claim ends. If we find that "involuntary manslaughter of a family or household member" is a distinct offense, we must consider whether it was sufficiently charged in the indictment and whether it is a lesser-included offense of murder. The question before us is a question of law, which we review *de novo*. *People v. McClure*, 218 Ill. 2d 375, 381 (2006).

We look to the language of the statute codifying the offense of involuntary manslaughter. Section 9–3 of the Criminal Code of 1961 is entitled "Involuntary Manslaughter and Reckless Homicide." 720 ILCS 5/9–3 (West 2000). Section 9–3 provides:

> "§9–3. Involuntary Manslaughter and Reckless Homicide.
>
> (a) A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly, except in cases in which the cause of the death consists of the driving of a motor vehicle or operating a snowmobile, all-terrain vehicle, or watercraft, in which case the person commits reckless homicide.
>
> (b) In cases involving reckless homicide, being under the influence of alcohol or any other drug or drugs at the time of the alleged violation shall be presumed to be evidence of a reckless act unless disproved by evidence to the contrary.
>
> (c) For the purposes of this Section, a person shall be considered to be under the influence of alcohol or other drugs while:
>
>> 1. The alcohol concentration in the person's blood or breath is 0.08 or more based on the definition of blood and breath units in Section 11–501.2 of the Illinois Vehicle Code [625 ILCS 5/11–501.2];
>>
>> 2. Under the influence of alcohol to a degree that renders the person incapable of safely driving a motor

vehicle or operating a snowmobile, all-terrain vehicle, or watercraft;

3. Under the influence of any other drug or combination of drugs to a degree that renders the person incapable of safely driving a motor vehicle or operating a snowmobile, all-terrain vehicle, or watercraft; or

4. Under the combined influence of alcohol and any other drug or drugs to a degree which renders the person incapable of safely driving a motor vehicle or operating a snowmobile, all-terrain vehicle, or watercraft.

(d) Sentence.

(1) Involuntary manslaughter is a Class 3 felony.

(2) Reckless homicide is a Class 3 felony.

(e) Except as otherwise provided in subsection (e-5), in cases involving reckless homicide in which the defendant was determined to have been under the influence of alcohol or any other drug or drugs as an element of the offense, or in cases in which the defendant is proven beyond a reasonable doubt to have been under the influence of alcohol or any other drug or drugs, the penalty shall be a Class 2 felony, for which a person, if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 3 years and not more than 14 years.

(e–5) In cases involving reckless homicide in which the defendant was determined to have been under the influence of alcohol or any other drug or drugs as an element of the offense, or in cases in which the defendant is proven beyond a reasonable doubt to have been under the influence of alcohol or any other drug or drugs, if the defendant kills 2 or more individuals as part of a single course of conduct, the penalty is a Class 2 felony, for which a person, if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 6 years and not more than 28 years.

(f) In cases involving involuntary manslaughter in which the victim was a family or household member as defined in paragraph (3) of Section 112A–3 of the Code of Criminal Procedure of 1963 [725 ILCS 5/112A–3], the penalty shall be

a Class 2 felony, for which a person if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 3 years and not more than 14 years." 720 ILCS 5/9–3 (West 2000).

Section 9–3 of the Criminal Code, by its plain language, codifies two offenses: involuntary manslaughter and reckless homicide. The statute sets forth the base elements for these offenses in subsection (a). 720 ILCS 5/9–3(a) (West 2000). Definitions pertaining to the elements of reckless homicide are set forth in subsections (b) and (c). 720 ILCS 5/9–3(b), (c) (West 2000). Subsection (d), entitled "Sentence," sets forth the base sentences for the offenses codified in the statute–involuntary manslaughter and reckless homicide, respectively. 720 ILCS 5/9–3(d)(1), (d)(2) (West 2000). Subsections (e) and (e–5) set forth enhancements applicable to reckless homicide that should be applied when additional facts, or sentence-enhancing elements, are present and have been proven beyond a reasonable doubt. 720 ILCS 5/9–3(e), (e–5) (West 2000). Subsection (f), in turn, sets forth a sentence-enhancing element applicable to the offense of involuntary manslaughter: the court "shall" sentence an offender as a Class 2 felon if the victim was a "family or household member." 720 ILCS 5/9–3(f) (West 2000). After examining the statute as a whole, we conclude that the legislature did not create a separate offense of "involuntary manslaughter of a family or household member" through subsection (f) of the statute. The placement of the enhancing element, after a description of the base sentence and directly following sentencing enhancements related to reckless homicide, support this conclusion. Further, section 9–3 codifies two distinct offenses: involuntary manslaughter and reckless homicide. If the legislature intended to codify a third offense, it stands to reason that the legislature would have treated the third offense in the same manner it treated the other two offenses set out in the statute, and would have included the third offense in the title of the statute, as well as paragraph (a), which sets forth the base elements of each codified offense.

This reading of section 9–3 is supported by our opinion in *People v. Green*, 225 Ill. 2d 612 (2007), which addressed the identical argument with respect to the robbery statute. See 720 ILCS 5/18–1 (West 2004). In *Green*, the defendant was charged with one count of

robbery. The indictment alleged that the defendant committed the offense of robbery when he knowingly took property from "a person 60 years of age or over, by use of force, in violation of 720 ILCS 5/18–1(a) (Class 1 Felony)." *Green*, 225 Ill. 2d at 614. The matter proceeded to a jury trial and the jury was instructed on the charge of "robbery of a victim 60 years of age or over." *Green*, 225 Ill. 2d at 615. The elements instruction stated that, to sustain a charge of "robbery of a victim 60 years of age or over" the State was required to prove that the defendant knowingly took property from the person or presence of the victim through the use of force and that the victim was 60 years of age or over. *Green*, 225 Ill. 2d at 615. The jury returned a signed verdict that stated: "We the jury, find the defendant *** guilty of Robbery." *Green*, 225 Ill. 2d at 614. On appeal, the appellate court declared, *sua sponte*, that a "conflict" existed between the elements instruction and the verdict form. The court reasoned that this "conflict" violated the principles espoused in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), because the jury's verdict form indicated that it did not find each element of the offense of "robbery of a person 60 years of age or over" beyond a reasonable doubt. Accordingly, the appellate court reduced defendant's conviction for "robbery of a person 60 years of age or over," a Class 1 felony, to robbery, a Class 2 felony. *Green*, 225 Ill. 2d at 617-18.

The State appealed, and this court rejected the appellate court's analysis of the alleged conflict. We examined the robbery statute and found that it, much like the involuntary manslaughter statute, sets forth the elements of the offense of robbery at the outset, and then sets forth possible sentences, including an enhanced sentence based on the status of the victim. See 720 ILCS 5/18–1 (West 2004). We thus concluded that " 'robbery' and 'robbery of a person 60 years of age or over' are not distinct crimes, a fact that even a cursory examination of the robbery statute reveals. Rather, Illinois has a single offense called 'robbery' that is either a Class 1 or a Class 2 felony, depending upon the nature of the victim." *Green*, 225 Ill. 2d at 619. *Green*'s analysis of the robbery statute is applicable to the involuntary manslaughter statute, as both statutes initially set forth the elements of the offense and then, in a separate section, provide sentencing classifications based on the status of the victim.

Defendant asserts that *Green* is inapposite to this case and does not address the same issue now before this court. We acknowledge that *Green* and the instant case came to us in different contexts. In *Green*, the defendant alleged an error in a jury verdict form whereas defendant in this case alleges an error in the charging instrument. However, in both cases, the defendants' claims of error were based on the faulty premise that factors which enhanced the sentencing range of the crime for which the defendants were actually convicted served to create a separate, distinct crime with additional elements that were not proven. We rejected that premise in *Green*, and we reject it here. Accordingly, the distinction highlighted by defendant is of little consequence to our analysis.

Defendant further maintains that we cannot follow *Green* in this case because doing so conflicts with due process principles set forth by the Supreme Court's holding in *Apprendi*, and adopted by this court in *People v. Thurow*, 203 Ill. 2d 352 (2003). Defendant argues that *Apprendi* held that a factor which increases the range of penalties to which a defendant is exposed constitutes an element of the offense. Based on this interpretation of *Apprendi*, defendant reiterates that the State failed to meet its due process obligation of apprising him of the elements of the offense charged.

Defendant's argument fails for several reasons, the first being that *Apprendi* does not speak to indictment-related issues. In *Apprendi*, the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." The *Apprendi* rule does not address the charging instrument. In fact, as we explained in *Thurow*:

> "the Supreme Court in *Apprendi* specifically declined to address the indictment question. [Citation.] The Court noted that the defendant *** did not assert a constitutional claim based upon the indictment's failure to charge the sentence-enhancement factors. Instead, the defendant relied upon the due process clause of the fourteenth amendment, which the Court stated has never been construed to make the fifth amendment right to 'presentment or indictment of a Grand Jury' applicable to the states. [Citation.] Indeed, *Apprendi*'s central holding [citation] makes no mention of any indictment

-10-

right. Instead, as previously noted, it focuses upon the rights to trial by jury and proof beyond a reasonable doubt. We therefore reject defendant's argument that *Apprendi* requires 'notice of the sentence-enhancing facts.' " *Thurow*, 203 Ill. 2d at 366-67.

See also *Green*, 225 Ill. 2d at 621 ("*Apprendi* 'merely requires the State to prove to the jury beyond a reasonable doubt all facts underlying the sentence imposed on the defendant' "), quoting *Hill v. Cowan*, 202 Ill. 2d 151, 158 (2002).

We note that, in *Thurow*, the defendant was charged with involuntary manslaughter and the victim's status as a family or household member was pleaded in the indictment, but that factor was omitted from the jury instructions. The trial court nevertheless sentenced the defendant to an enhanced sentence due to the victim's status, based on its own finding that the victim was a family or household member. This court applied the *Apprendi* rule, and held that it was error for the trial court to enhance the defendant's sentence because the enhancement increased the range of penalties to which the defendant was exposed, is an element of the offense, and should have been proven to the jury beyond a reasonable doubt. *Thurow*, 203 Ill. 2d at 370. This court nevertheless concluded that the error was harmless in light of the overwhelming evidence demonstrating that the victim was a family or household member. *Thurow*, 203 Ill. 2d at 370-71. The error we recognized in *Thurow* has no bearing on this case because, like *Apprendi*, *Thurow* does not address the charging instrument.

To the extent that defendant is arguing that *Thurow* suggests that the family or household member "element" of involuntary manslaughter creates a separate offense, we reject his interpretation. *Thurow* describes the family or household member element as a "sentence-enhancing fact" or a "sentence-enhancing element" of involuntary manslaughter, and does not, in any way, treat "involuntary manslaughter of a family or household member" as a separate crime, unique from the crime of involuntary manslaughter. See *Thurow*, 203 Ill. 2d at 366. In fact, the first paragraph of the analysis section of the opinion explains that "[i]nvoluntary manslaughter is a Class 3 felony [citation] for which the penalty is 'not less that 2 years and not more than 5 years' [citation]. However,

where the victim is a family or household member, involuntary manslaughter is a Class 2 felony 'for which a person *** shall be sentenced to a term of not less than 3 years and not more than 14 years.' [Citation.]" *Thurow*, 203 Ill. 2d at 360. This explanation demonstrates that the *Thurow* court recognized one crime of involuntary manslaughter that carried two potential punishments.

Thus, consistent with *Green*, we hold that section 9–3(f) of the Code sets forth a sentence-enhancing element that shall be applied to the offense of involuntary manslaughter where the evidence demonstrates that the victim was a family or household member. 720 ILCS 5/9–3(f) (West 2000). Section 9–3(f) does not create a separate and distinct offense of "involuntary manslaughter of a family or household member." Having reached this conclusion, we reject defendant's claim that he was wrongfully convicted of a crime for which he was not charged, and his claim that the language of the indictment was insufficient to adequately apprise him of the crime for which he was ultimately convicted. We also reject defendant's assertion that his sentence is void because the State failed to provide notice of its intent to use an alleged fact to increase the range of penalties for an offense as required by section 111–3(c–5) of the Code (725 ILCS 5/111–3(c–5) (West 2000)). Defendant concedes in his brief that the requirements of section 111–3(c–5) would not apply if this court concluded that defendant was convicted of a lesser-included offense of murder. See also *People v. Simmons*, 93 Ill. 2d 94, 100-01 (1982) (stating that an indictment was not defective for failing to allege lesser-included offenses of murder because a charge of murder may serve as the basis for a conviction of any lesser-included offense); *People v. Lewis*, 375 Ill. 330, 334 (1940).

CONCLUSION

For the foregoing reasons, we conclude that the trial court properly sentenced defendant to an enhanced sentence for the offense of involuntary manslaughter in light of the victim's status as a family or household member. We affirm the judgment of the appellate court affirming the trial court's judgment.

*Affirmed.*